No. 29,570.

E. B. Ross et al., *Appellants*, v. THE AUSTIN DRILLING COMPANY et al., *Appellees*.

(293 Pac. 757.)

Opinion filed December 6, 1930.

*John H. Crawford, C. A. Matson, L. H. Stearns, E. P. Villepigue, George Siefkin, A. H. Atkins* and *J. H. Gerety,* all of Wichita, for the appellants.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair* and *W. A. Kahrs,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a contract to recover for medical services. The trial court sustained a demurrer to plaintiffs' evidence, and they have appealed.

The record discloses that Earl Armstrong was an employee of the defendant, the Austin Drilling Company, and both were operat-

ing under the workmen's compensation act. While so engaged he sustained severe personal injury which, from the record, we assume was compensable under the act. He was taken to a hospital, and the plaintiff, Doctor Ross, was called to treat him. Mr. Austin was there and stated to Doctor Ross that he had called one of the members of the firm from whom he got his insurance and told him the man was injured and that Doctor Ross was there to take care of him, and was told that was all right. The doctor was told to go ahead and take care of him and to get anyone else to help him that was necessary. Doctor Ross called Doctor Gearhart. The doctors advised an amputation of the leg, but Armstrong objected. Mr. Austin was there and told the doctors:

"I want this man to have every care. Give him everything he needs. He is a damned good man and I want him taken care of."

At that time the broken leg was dressed because of Armstrong's opposition to its amputation, but a day or two later it was necessary to amputate it. Three blood transfusions were necessary. Austin was there on several occasions when the patient was in bad shape, and at each time told the doctors to give him every care, to get a special nurse, if needed. The adjuster of the insurance carrier was present on several occasions when the patient was bad and urged plaintiffs to give him every care. A physician of the insurance carrier had been sent to see the patient and advised the blood transfusion, and the adjuster specifically promised to pay for that. The physicians treated Armstrong in the hospital for five or six weeks, seeing him about three times a day. The bill for the services of the two physicians, including the hospital bill, was $968. Plaintiffs reported to the insurance carrier of the drilling company itemized expenses from time to time, as requested, and the final itemized bill. Plaintiffs were then informed by defendants that they would not be responsible for more than $200—the maximum amount provided in the workmen's compensation act—for hospital and surgical attention. (R. S. Supp. 1930, 44-510.) At the time of the treatment, and at the time Austin and the adjuster of his insurance carrier talked with plaintiffs, the plaintiffs knew that Armstrong and the Austin Drilling Company were working under the workmen's compensation act, and knew, in a general way, of its provisions; but at no time in their conversation was that fact mentioned. Plaintiffs were not told that the limit of defendants' liability would be that mentioned by the compensation act; but, on the other hand,

were requested and authorized to do everything that was needed for the injured workman—have assistance in setting or amputating the broken leg; get a special nurse, if needed; give blood transfusions, and generally to give him every care.

In support of the judgment of the court below it was argued by appellees that plaintiffs were bound to know the limitations of the defendants under the workmen's compensation act, and, notwithstanding the language used, there could be no liability upon them in excess of the maximum provided by that act. We cannot approve this view. It is true, as between the workman and his employer, when, by election or otherwise, they were operating under its provisions, the workmen's compensation act constitutes a contract between them, the terms of which are found in the statute. (*Moeser v. Shunk*, 116 Kan. 247, 251, 226 Pac. 784; *Johnson, Guardian, v. Milling Co.*, 116 Kan. 731, 743, 229 Pac. 359.) Physicians are not within the class of persons who can elect to come under the provisions of the act. The compensation act, therefore, does not represent a contract either between the physician and the injured workman, or between the physician and the employer of the workman. There is nothing in the compensation act which prevents either an employer or employee from making a contract with the physician for services, as such contracts are usually made, and a contract when so made with the physician is free from the terms of the compensation act, unless, of course, that act is specifically made a part thereof. (*Noer v. G. W. Jones Lumber Co.*, 170 Wis. 419; *Augustus v. Lewin*, 224 Ill. App. 376; *Ferren v. Warren Co.*, 124 Me. 32; *White's Case*, 126 Me. 105; *Integrity Mut. Casualty Co. v. State Industrial Com'n*, 87 Okla. 92; *Wilson Drilling Co. v. Beyer*, 138 Okla. 248; *Feldstein v. Buick Motor Co.*, 187 N. Y. S. 417; *Weinreb v. Harlem Bakery & Lunch Room*, 197 N. Y. S. 833; *Capron v. Utica Ice Co.*, 217 N. Y. S. 732; *Bock v. P. J. Keogan, Inc.*, 218 N. Y. S. 83; *Collins v. Joyce & Rasmussen*, 146 Minn. 233; *In re Meyers*, 64 Ind. App. 602.)

Appellees seek to apply the principle stated in 21 R. C. L. 412, also, to the same effect, in 48 C. J. 1163, and supported by the authorities there cited, as follows:

"The general rule that where a person requests of another the performance of services the law implies a promise to pay the reasonable value of the services performed has no application in the case of a physician rendering professional services to a third person, if the relation to the patient of the

person who requests the services is not such as imports the legal obligation to provide them."

This doctrine, meritorious in a proper case, is not applicable here. Because of the provisions of the workmen's compensation law binding upon the workman, Earl Armstrong, and his employer, the Austin Drilling Company, defendants were under a duty to provide him medical attention to the amount of as much as $200; hence they cannot be said to be third parties with no financial obligation to the injured person. It is quite possible they had a greater interest, in that, had the workman died, their liability to his dependents would have been much greater than their liability to him if he recovered with nothing worse than the amputated leg. (See *Becker .v. Humphries,* 34 Ga. App. 644; *Capron v. Utica Ice Co.,* supra; *Spicer v. Williamson,* 191 N. C. 487.) Whatever motive might prompt them to do it, there is no reason why they could not make a contract to pay necessary services.

Appellees argue that it is the duty of the injured employee, primarily, to pay his own doctor bill, and that the promise, not in writing, of a third party to pay it would not be enforceable under the statute of frauds. That would depend, of course, upon whether he was going to pay the debt of another, or make a direct contract of employment with the physician. If it were the latter, the statute of frauds would have no application.

It was the view of the trial court that if there were any contract of employment here it was an implied contract, as distinct from an express one. We are not prepared to say, from this record, that there was not an express contract. Whether there was or not depends not only on the language used, but the surrounding circumstances, and really gets down to the intention and understanding of the parties. Under the state of the record before us we think it would have been proper to submit the question to the jury of whether or not there was an express contract.

The trial court took the further view that in the absence of an express contract, and in view of the fact that defendants were obligated by the workmen's compensation act to the injured employee to furnish him medical attention to the amount of $200, the implied contract, as disclosed by the record, should not be held to obligate defendants further to plaintiffs than they were obligated to the injured workman. This view is erroneous for the

reason that the plaintiff physicians were in no way concerned with the workmen's compensation act. They were entitled to reasonable compensation for their services from some one, irrespective of the amount which defendants were obligated by the terms of the compensation act to pay for medical services in the way of compensation to the injured employee, or his dependents. If defendants desired to limit their liability to the terms of the compensation act they should have so informed plaintiffs. They might well have known that the services being rendered at their request were of the value much in excess of $200. Appellees contend that the hospital bill which was assigned to plaintiffs could not, in any event, be included in the charge. But it is not suggested how this injured workman could have been cared for, as requested by defendants, any better, or at less expense.

From what has been said it necessarily follows that the judgment of the court below must be reversed, with directions to overrule the demurrer and submit to the jury the question whether or not, under all the facts and circumstances disclosed by the record, there was a contract, either express or implied, to pay for these services, and, if so, to render judgment for plaintiffs.