No. 30,683.

D. K. THOMPSON, *Appellant*, v. THE GENERAL MACHINE & TOOL
COMPANY et al., *Appellees*.

(11 P. 2d 685.)

Opinion filed June 4, 1932.

*E. W. Grant*, of El Dorado, for the appellant.

*Chester I. Long, Claude I. Depew, W. E. Stanley, William C. Hook* and *James T. Klepper*, all of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from an award in a compensation case. The workman, D. K. Thompson, met with personal injury on May 14, 1930, while working for the General Machine and Tool Company, his employer, and both parties were subject to the compensation act. His weekly wage at the time of the accident was $65. Notice of the injury was received by the employer and a proper demand was made for compensation. It appears that $222.70 was paid by the employer for medical services in accordance with the compensation act, and also compensation was paid to the workman to the extent of $828. Testimony was taken as to the nature

of his injuries, which were severe, and the compensation commissioner made the following findings:

"It is found in addition to the admissions of the parties that the claimant met with an accidental injury arising out of and in the course of his employment, as a result of said injury claimant was temporarily totally disabled for a period of seventy (70) weeks until September 23, 1931; that after that time the injury to the costicartilaginous junction with the sternum will not interfere with the claimant carrying on his regular line of work; that thereafter he will suffer a thirty-three and one-third (33⅓) per cent disability to his left arm.

"It is found that the testimony regarding surgical interference is too conflicting for the commissioner to order the operation. It is found that for the purpose of the act at the time of the injury claimant was a resident of McPherson, Kan., and is not entitled to three dollars per day and transportation from El Dorado to McPherson, but is entitled to three dollars per day and transportation from El Dorado to Wichita, Kan.

"Wherefore award of compensation is hereby made in favor of the claimant D. K. Thompson and against the respondent, The General Machine & Tool Company and the London Guaranty & Accident Company, Ltd., insurance carrier, for 69 weeks' compensation at the rate of $18 per week; that on August 3, 1931, 62.5 weeks at the rate of $18 per week in the sum of $1,128.86 is due; $828 of which amount has been paid, leaving a balance of $300.86, which is ordered paid in a lump sum; the other 6⅞ weeks at the rate of $18 per week is payable at the time and place and manner provided in the contract of employment, being an award for temporary total disability; thereafter claimant will suffer permanently 33⅓ per cent loss of the use of the left arm, and is hereby awarded compensation in the amount of $6 per week for a period of 210 weeks to be paid at the time and place and in the manner provided in the contract of employment.

"Award is made of $12, being four days for trips from El Dorado to Wichita and return, and transportation for the trips in the amount of $6.60, making $18.60, which is due and payable in a lump sum."

An appeal from the award of the compensation commissioner was taken to the district court and there the findings and award were approved and confirmed. In the appeal taken to this court plaintiff states that he is satisfied with all the findings based on fact as made by the commission, and contends that the feature of the award based on future disability and compensation therefor is contrary to the law that governs that part of the award.

There is no complaint of the finding for temporary total disability, but plaintiff contends that the compensation for loss of the arm should not be measured by the schedule after temporary total disability ceased. After that ceased there remained a partial loss of the use of his arm, the compensation for which was measured by the commissioner according to the schedule. The nonschedule disability,

which was not permanent, preceded the scheduled disability, which was the partial loss of a member for which a schedule is prescribed.

As the findings show, temporary total disability was found to exist up to September 23, 1930, a period of seventy weeks, for which compensation was allowed. About this allowance no complaint is made. It was found that thereafter temporary total disability would cease and that the workman would then be able to carry on his regular line of work except for a thirty-three and one-third per cent disability of his left arm. D'uring the existence of that incapacity he was entitled to compensation, and the only question raised is whether it shall be measured by the standard of the schedule prescribed or by the rule applicable to unscheduled injuries.

The plaintiff contends that the remaining incapacity of the arm should not have been treated as a scheduled injury, nor should the compensation have been measured on that basis. It appears that the incapacity of the arm which remained after the temporary total disability had ceased, was thirty-three and one-third per cent of the use of it for 210 weeks. It is argued that the schedule is an exclusive remedy for a specific injury to a member and is not applicable in cases where an accident causes unscheduled injuries to other parts of the body as well as to the member. We see no ground for that theory nor room for its application in this case. When an injury results in the loss or partial loss of a hand or foot the statute fixes a measure of compensation for such loss which must be applied whether or not the workman suffered other injuries to the body which do not fall within the statutory schedule. If a workman suffers injuries of both kinds and was given compensation, for instance, for the loss of a hand, would that preclude him from urging on appeal that he was entitled to compensation for severe injury to other parts of the body, which were not within the schedule and which resulted from the same accident? We think not. The statute provides a measure of compensation for scheduled and unscheduled injuries without regard to whether they occur separately or in combination with one another. Nothing in the decided cases warrants the interpretation urged by plaintiff. On the contrary, it has been ruled in *Resnar v. Wilbert & Shreeb Coal Co.*, 132 Kan. 806, 297 Pac. 429, that both scheduled and unscheduled injuries resulting from an accident might be considered together and the different standards of compensation applied. There a coal miner was totally disabled for a period of six months by an injury from which he had recovered except for the loss of a

foot which had been rendered permanently useless. It was held that the statutory schedule was applicable in measuring the loss of the use of the foot and that compensation for the temporary total incapacity was applicable to the other results of the injury, and that each should be measured and paid for on the appropriate statutory basis.

In *Beal v. The El Dorado Refining Co.*, 132 Kan. 666, 296 Pac. 723, a workman accidentally suffered partial loss of sight of one eye, partial loss of hearing of both ears, and a disfigurement of his face, and it was held that compensation was allowable not only for the scheduled injuries to his eyes and ears at the rate fixed, but that the compensation was also payable for the disfigurement under the rates for unscheduled injuries. All of the injuries resulted from the same accident, and all were considered in the same proceeding and the compensation fixed by the different standards.

Plaintiff in support of his theory calls attention to a provision in the revised compensation act (R. S. 1931 Supp. 44-510), and also to *Neuhaus v. Hope Engineering Co.*, 132 Kan. 72, 294 Pac. 655, commenting on the amended act. In the Neuhaus case reference was made to the exclusive character of compensation for specific injuries within the schedule. That is, that when compensation is allowed for a specific injury under the schedule no additional compensation shall be allowed for either temporary or permanent disability. This provision is not applicable to the facts in this case and was enacted to overcome a defect in the old statute allowing double compensation for the same disability, or what has been termed as a pyramiding of compensation. It was held that when compensation was allowed for the loss of a finger, a part of the hand, no compensation could be allowed for the hand which was not otherwise injured. The language used, that the allowance was exclusive of all other compensation, means that it is exclusive for the specific injury. That is, that the specific loss of the finger was exclusive of other compensation for that specific loss. For instance, it means that compensation is not allowable for the loss of a leg and also of a foot which was a part of the leg, nor could there be an allowance for the loss of a hand and also the fingers on it. Nor can the loss of a finger for which payment has been made under the schedule be added to the compensation for temporary or permanent disability for the particular injury of the finger. In the Neuhaus case, *supra*, it was said:

"When a workman is entitled to compensation for a specific schedule injury, that compensation is exclusive of all other compensation; no additional compensation shall be allowed, not merely for that specific injury, but for either temporary or permanent disability *consequent upon that injury*. The manifest purpose was to stop the pyramiding of compensation under this court's interpretation of the old law in the cases which have been referred to.

"In this instance claimant's hand was not injured. Only the little finger was injured. Compensation for permanent partial loss of use of the little finger is exclusive of all other compensation for injury to *that member,* and no additional compensation may be allowed for disability of the hand." (p. 75.)

The decision in *Beal v. Refining Co.,* supra, demonstrates that the scheduled injury is distinct from one that is not within the schedule, and that payment for one does not exclude payment of additional compensation for the other. See, also, *Hering v. San Ore Const. Co.,* 130 Kan. 70, 285 Pac. 592; *Orendoc v. Kaw Steel Const. Co.,* 131 Kan. 366, 291 Pac. 952; *Bray v. Carrothers Construction Co.,* 131 Kan. 766, 293 Pac. 504.

There is a contention by plaintiff that the decision of the commissioner in fixing the duration of the disability as, for instance, when temporary total disability would cease, was no more than a guess, which is not permissible under the statute. It is said that the law does not authorize him to prognosticate as to future conditions or the duration of a disability. In most of the compensation cases the duration of a disability is one of the principal questions to be determined. It is not done upon a guess, prophecy or speculation. It is established upon the evidence of experts who are qualified and experienced in ascertaining existing conditions and the time for cure, if curable at all, and in the light of all the facts they can fairly well determine how long the disability will last. Almost every recent volume of our reports disposes of cases in which findings of the commissioner have been approved by this court which were based on that character of evidence. In *Gorrell v. Battelle,* 93 Kan. 370, 144 Pac. 244, a compensation case triable at that time in the district court, the duration of incapacity was the subject of consideration, and it was held:

"The workmen's compensation act provides for compensation during incapacity, and the implication is that compensation should cease when incapacity ends. In an action for compensation the duration of incapacity is a question of fact to be determined as other questions of fact are determined, and a challenge of the correctness of the trial court's conclusion respecting the duration of incapacity will be considered on appeal in the same way as other challenges of a similar nature." (Syl. ¶ 4.)

A question has been raised as to the disallowance of traveling expenses of plaintiff made at the request of the defendants. The statute, R. S. 1931 Supp. 44-515, provides among other things that after an injury to an employee he shall, upon the request of the employer, submit himself for examination of physicians or surgeons selected by the employer, with the proviso that if the employee is notified to submit to such examination before the employer's doctor or surgeon, he may not submit himself for such examination until he has been furnished with funds to pay transportation to and from the place of examination and in addition the sum of $3 per day for each day that he is required to be away from his residence. Plaintiff claimed his residence in El Dorado and was injured near McPherson. For a time he was in a hospital in McPherson. Later, upon the request of the defendants, he made a number of trips to McPherson and Wichita to meet designated physicians. He claims he should have been allowed $134.13, as shown by an itemized statement stating the number of trips made to McPherson and return, and also from El Dorado to Wichita and return. Defendants say there was a failure of proof as to plaintiff's residence and also a failure to show that these trips were for examination rather than for treatment. It appears that plaintiff presented, and the court received in evidence, an itemized statement of these trips as traveling expenses and per diem as allowable under the statute and made as requested by the defendants. No objection was made to the admission of the exhibit and no claim was then made by the defendants that the trips were for treatment and not examination. The court, on the showing thus made, found that the home of the plaintiff was in El Dorado and that a number of trips were made to meet Doctor Heaston at McPherson and four trips to Wichita to meet Doctor Bence, an orthopedic specialist, and that these were made at the request of respondent.

Under the circumstances stated we think the proof warranted an allowance for the trips made on defendants' request. The defendants cannot well resist the allowance for expenses of trips by plaintiff to physicians and surgeons made at the request of defendants and for their purposes in resisting payment of plaintiff's claims. It is stated that an allowance of $18.60 was made for the four trips to Wichita and this allowance should be deducted from the $134.13 for the entire traveling expense and per diem, leaving unpaid $115.53.

The judgment will therefore be modified by adding the additional allowance of $115.53, and otherwise the judgment is affirmed.