No. 30,785.

DR. D. E. CLOPPER, *Appellee,* v. THE RAILWAYS ICE COMPANY, *Appellant.*

(16 P. 2d 512.)

Opinion filed December 10, 1932.

*C. A. Bowman,* of Kansas City, *Henry M. Shughart* and *Lowell R. Johnson,* both of Kansas City, Mo., for the appellant.

*H. J. Smith* and *P. W. Croker,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by a physician for a balance of $467.50 claimed to be due him from defendant for medical services rendered to one Cecelio Hernandez, an employee of the defendant, by reason of an alleged contract made with plaintiff by which this defendant employed him to take care of the employee and agreed to pay for the services rendered. There was a trial to a jury, which answered special questions and returned a general verdict for plaintiff, on which judgment was rendered. Defendant has appealed.

The facts disclosed by the record are not seriously in dispute and may be stated briefly as follows: The defendant, the Railways Ice Company, has two ice manufacturing plants at Kansas City, Kan.,

and employs a number of workmen. They operate under the workmen's compensation act, and in accordance with the provisions of that act (R. S. 44-532) defendant carries workmen's compensation insurance, having its policy with the Zurich General Accident and Liability Insurance Company. It appears that company had considerable insurance of this character in the industrial district at Kansas City and had made arrangements with a Doctor Speer, and also with Doctor Clopper, to give medical treatment to injured employees whose employers were insured by it. The names of these physicians had been furnished defendant's officers. About two o'clock in the morning of March 30, 1930, Cecelio Hernandez, an employee of the defendant at one of its ice plants, was injured by accident while working at the plant. Someone at the plant called Doctor Speer, who could not come because of his own illness. He then called Doctor Clopper, who said he would come but his car was out of commission, and defendant sent an automobile for him. He went to the ice plant, examined the injured workman, and said his injuries were so severe that he should be taken to the hospital. Someone at the ice plant took the injured man to the hospital. Doctor Clopper treated Hernandez at the hospital until his death, September 14, 1930. About a week after the injury plaintiff and Doctor Nesselrode performed an operation on Hernandez. Who requested this or arranged for Doctor Nesselrode to perform the operation is not clear from the record before us, and perhaps is not important. On August 14, 1930, the insurance company sent Doctor Clopper a check for $67.50, "In full settlement of all claims for services rendered Cecelio Hernandez as per award of commission of August 7, 1930," together with a letter in which it was stated:

"While your total bill was $276, the total medical expense was $868.45, and we only had the $200 allowed under the compensation act by the commission in the award with which to make these payments."

The letter expressed regret that the allowance under the award was not sufficient to pay plaintiff's bill in full and the hope that the company might be able to coöperate with plaintiff in the future to the extent of making this not a loss. When plaintiff was called to treat Hernandez he had been the physician for the insurance company for more than twelve years, had been frequently called to treat employees injured under similar circumstances, and had been paid for his services by the insurance company. He testified that

on the occasion when Hernandez was hurt he went over to the Railways Ice Company and saw the man, the same as he had done with other men who had been hurt over there in years past; that at the time he went to the plant to see Hernandez he had every reason to believe that it was an insurance company case, and he expected the insurance company to pay his bill for the treatment of Hernandez. He fully expected that up until the time he received the letter, dated August 14, from the insurance company. A portion of his testimony on that point reads as follows:

"Q. You say, then, you were acting as the insurance company doctor operating on that man and attending him? A. Yes.

"Q. Now, you have been shown a letter here from the Zurich Insurance Company dated August 14. Up to that time, did you think you was the doctor for the Zurich Insurance Company and they were going to pay you your bill —up until you got this letter? A. Yes.

"Q. Up to that time you fully expected the insurance company would pay you? A. Yes."

Sometime prior to August 14 plaintiff saw S. A. McLain, local manager of the Railways Ice Company, at the hospital. McLain asked plaintiff how the man was getting along, what his condition was, and what his show was to get well. Plaintiff told him.

"Q. What did he [McLain] say, if anything, to you (plaintiff) about your proceeding with the case and looking after him? A. He was very sorry for the man's condition and hoped we would be able to do something for him; we should do everything we possibly could—I think was about the substance of these conversations."

Plaintiff never wrote to defendant any letter asking it to pay his bill. The first the defendant knew plaintiff was expecting it to pay any part of his bill was when it received a summons in this action.

The jury answered special questions as follows:

"1. Did anyone connected with the defendant company tell the plaintiff that the defendant company would pay his bill for treatment? A. No."

"3. Did plaintiff at any time while rendering treatment to said Hernandez ever advise defendant company that he expected the company to pay his bill? A. No."

"5. Did the plaintiff, when he accepted the said Hernandez as a patient, do so with the belief that he, the plaintiff, would be paid for his services by the insurance company carrying defendant's compensation insurance, the Zurich General Accident and Liability Insurance Company? A. No."

Defendant's motion to set aside the answer to special question

No. 5, for the reason that it was contrary to the evidence and not supported by any evidence, was overruled. Complaint is made of that ruling. The motion should have been sustained. The only evidence bearing directly on that question is that of the plaintiff, who testified that he understood at the time he was called to treat the workman that it was an insurance company case, and that he expected to be paid by the insurance company, as he had been in a number of similar cases throughout recent years. That evidence was not contradicted by anyone. Perhaps this is not important, however, in view of our conclusion upon another question argued.

Appellant contends that its demurrer to plaintiff's evidence should have been sustained. We concur in that view. In plaintiff's petition he predicated his grounds for recovery against defendant on the allegation that at the time of the injury to the workman, on March 30, 1930, the defendant, the Railways Ice Company, "entered into a contract with this plaintiff and employed him to take care of said patient and agreed to pay for the services rendered." We are unable to find any evidence in the record to sustain that allegation. It is clear from the evidence that the relation of the parties among themselves was clearly understood. The defendant and its workmen were operating under the compensation act. Defendant carried insurance for the benefit of its workmen, as required by the compensation act. The insurance company was required to pay for medical attention to injured workmen in the amount determined by the compensation commissioner, not exceeding the maximum provided by statute. To provide the medical service required by the compensation act, and to carry out its liability under its policy, the insurance company had arranged with plaintiff to act as its physician in such cases, and plaintiff's name had been furnished to defendant. Plaintiff was called because of that arrangement. He undertook the employment. He thoroughly understood it, as his own testimony clearly discloses. He expected the insurance company to pay him until after he received the letter of August 14. He never at any time prior to bringing this action, either in writing or by parol, requested defendant to pay any part of his bill for services.

In support of the judgment of the trial court appellee does not contend the evidence showed an express contract, but contends that a contract for defendant to pay for the services was necessarily implied by the fact that defendant's representative called him to treat

the patient, and he did so. We see nothing in the circumstances calling for any implied contract other than that it was an insurance company case and plaintiff was called because of his being the physician for the insurance company, to whom he was to look for his pay. That was his own understanding of the situation, and considering the circumstances as a whole it would seem to be the only one which could be implied. It is true that plaintiff, as a physician, is not one of the class of persons mentioned in the compensation act, and he is not necessarily bound by its terms. (*Ross v. Austin Drilling Co.*, 131 Kan. 824, 293 Pac. 487.) The employer might make an express contract to pay the services of a physician who treated one of his workmen without regard to any limitation of liability for medical services provided in the workmen's compensation act. It is not contended here there was such an express contract, so we need give that feature of the matter no · further consideration. Circumstances might be such that such a contract would be implied, but to do so they should be such as to show the intention and understanding of the parties to that effect. Here it is clear there was no meeting of the minds on the question of the obligation of the defendant to pay for the services. Plaintiff did not expect compensation from defendant at the time the services were rendered, nor did defendant expect to pay for them. (See *Ross v. Austin Drilling Co.*, supra; *Collins v. Martin*, 43 Kan. 182, 23 Pac. 95; *Gas Co. v. Gas Co.*, 84 Kan. 778, 115 Pac. 398; *A. T. & S. F. Rld. Co. v. Phelps*, 4 Kan. App. 139, 46 Pac. 183. See, also, 3 Page on Contracts, §1446; *Balt. & Ohio R. R. v. United States*, 261 U. S. 592, 598; *Anderson v. Transportation Co.*, 195 Mich. 734, 162 N. W. 273; *Railway Company v. Gaffney*, 65 Oh. St. 104, 61 N. E. 152; *Johnson v. Boston & Maine Railroad Co.*, 69 Vt. 521, 38 Atl. 267; *Remarkis v. Reid*, 64 Okla. 104, 166 Pac. 728.)

From what has been said it necessarily follows that the judgment of the court below must be reversed, with directions to enter judgment for defendant. It is so ordered.