No. 31,093

St. Mary's Academy, *Appellee*, v. The Railways Ice Company, *Appellant.*

(26 P. 2d 278.)

Opinion filed November 11, 1933.

*C. A. Bowman,* of Kansas City, *Henry M. Shughart* and *Lowell R. Johnson,* both of Kansas City, Mo., for the appellant.

*George H. West* and *P. W. Croker,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover the amount of a hospital bill. Judgment was for plaintiff. Defendant appeals.

Defendant operates a plant for the business of delivering ice to refrigerator cars. It is under the workmen's compensation act. Under the provisions of that act it is insured in the Zurich General Accident and Insurance Company. The insurance company had a contractual arrangement with two doctors in the vicinity of the industrial district of Kansas City. Defendant had the names of these two doctors and had been instructed to call one of them in case an employee was injured by accident in the course of his employment.

About two o'clock on the morning of March 29, 1930, an employee was injured. Doctor Clopper, one of those designated by the insurance company, was called. He found that the back of the injured workman was broken and directed that he be sent to a hospital.

He was taken to a hospital operated by plaintiff, where he lingered till September 14, when he died. The bill of the hospital was $710.45. The insurance company tendered plaintiff a check for $75, which it claimed was plaintiff's proportionate share of the $200 maximum allowance under the compensation act for medical treatment of injured employees. This check was refused, and this action was brought against the defendant for the amount of the bill.

The theory of plaintiff is that on account of the circumstances under which the workman was sent to the hospital there was an implied contract on the part of the defendant to pay the hospital bill incurred. There is some conflict between the parties as to what occurred at the plant when the workman was sent to the hospital, and for the purpose of our discussion we will take the version most favorable to plaintiff. When the doctor arrived at the plant and found the workman with a broken back he asked someone to call an ambulance and take the man to a hospital. The night engineer at the plant called, and an ambulance was sent. The local manager of defendant testified that the night engineer was in charge of the plant at night. The workman was accepted at the hospital, and care was taken of him there until his death. On June 6, 1930, a letter was written to plaintiff upon the letterhead of the insurance company. It was as follows:

"*Re:* Cecelio Hernandez v. Railways Ice Company.

"GENTLEMEN: This is to advise you on behalf of the Railways Ice Company and the Zurich Insurance Company, that they will not be responsible for any services rendered to Cecelio Hernandez in excess of the medical provisions of the Kansas compensation act.

"We are giving you this notice, not because we are assuming responsibility for any bills already created, but because from recent telephone conversations you seem to be of the opinion that because this employee was sent to Providence hospital that the Railways Ice Company and their insurer are liable for unlimited medical service. We want to correct that impression in order that you may take such steps as you may think advisable to protect the hospital for its bills. Yours very truly,

SHUGHART & JOHNSON,

By L. R. JOHNSON."

It should be noted that Shughart & Johnson are the attorneys for the insurance company. On July 20, 1930, a bill for $272.40 was sent to the workman, and on September 15, 1930, a bill for $710.45 was made out charging the workman with that amount. It was not delivered to him, on account of his death. This court considered a phase of this case in *Clopper v. Railways Ice Co.*, 136 Kan. 517, 16 P. 2d 512. In that case the doctor who was called to take care of the workman and who looked after him while he was in the hospital sued the ice company for the balance of his fee after he had been paid his proportionate share of the amount allowed for medical attention under the workmen's compensation act.

There was no doubt in that case but that the doctor was employed

by the insurance company. The question was whether there was an implied contract on the part of the ice company to pay the difference between what the compensation law allowed and the reasonable value of the service. The court held that there was no such contract.

The distinction upon which plaintiff relies here is that in this case it is claimed that the night engineer called the ambulance and sent the workman to the hospital, and hence bound the ice company, and that when a workman is brought to the hospital from the ice company the hospital authorities have a right to look to the ice company to pay the bill. The plaintiff also points to the letter heretofore set out and argues that the inference from that letter is the hospital authorities had notified the ice company they were looking to it for payment of the bill.

The liability of the ice company, if it is established, must be placed on the ground of implied contract. Was there any such a liability established? In the Clopper case the court in considering this question said:

"Circumstances might be such that such a contract would be implied, but to do so they should be such as to show the intention and understanding of the parties to that effect. Here it is clear there was no meeting of the minds on the question of the obligation of the defendant to pay for the services. Plaintiff did not expect compensation from defendant at the time the services were rendered, nor did defendant expect to pay for them." (p. 521.)

The night engineer was not such an employee as to be clothed with authority to bind the ice company to pay a hospital bill. The manager of the plant testified that on the night of the accident he told the night engineer to call the doctor who had been designated by the insurance company to take care of the injured employees. This does not prove that the superintendent directed the engineer to bind the company to pay hospital bills. This court has held that such an employee has no authority to bind his employer to pay medical or hospital bills. (See *A. & P. Rld. Co. v. Reisner*, 18 Kan. 458; also, *Sevier v. Birmingham, Sheffield & Tenn. River R. R. Co.*, 92 Ala. 258.) In 14a C. J. 435 it is said:

"Authority to bind the corporation for medical services, etc., either for employees or for others who are injured in the course of the operation of a railroad, is not ordinarily to be inferred from the duties of a subordinate agent or employee, such as a conductor, a station agent, a roadmaster, a yardmaster, an engineer, or an attorney for the company."

At the close of the plaintiff's case the defendant demurred to the evidence.

Taking the view of the evidence most favorable to plaintiff, we have concluded that this demurrer should have been sustained.

The judgment of the trial court is reversed with directions to enter judgment for defendant.

HUTCHISON, J., not sitting.