No. 32,920

MYRTLE WORKMAN, as an Individual and as Guardian of HERBERT EDWARD MARTIN, *Appellant*, v. THE KANSAS CITY BRIDGE COMPANY, *Appellee*.

(58 P. 2d 90)

Opinion filed June 6, 1936.

*Paul H. Ditzen*, of Kansas City, for the appellant.

*E. S. McAnany, T. M. Van Cleave, W. L. Phillips* and *B. W. Alden*, all of Kansas City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a workmen's compensation case. The workman was killed, and the claim was filed on behalf of his widow and minor child.

The sole question is the amount of compensation to which appellants are entitled. They appeal from the judgment of the district court affirming the award of the commissioner. The contention is they are entitled to a larger award. In December, 1932, appellee, the employer, entered into a contract with the state highway commission to construct a bridge over the Kansas river at Seventh street, in Kansas City, Kan. The entire structure is located in this state. The funds for the project were obtained by the highway commission from an appropriation under an act of congress. The pertinent portion of that act provided: "No individual directly employed on any such project shall be permitted to work more than thirty hours in any one week." The contract between appellee and the highway commission provided that skilled and unskilled labor should not be permitted to work more than

thirty hours per week. The minimum wage for unskilled labor was fifty cents per hour, the maximum wage for skilled labor was sixty-five cents per hour. The services of the workman were obtained through the county unit of the Federal Emergency Relief office in Kansas City, Kan. He was employed on January 5, 1933, as a pile driver, which work was classified by the highway commission as unskilled labor. During his employment with appellee, the workman's rate of pay was fifty cents an hour. The maximum of thirty hours per week was divided on the basis of a five-hour day and a six-day week. The workman's weekly wage was therefore $15. Deceased had been employed during the year preceding the accident only from January 5, 1933, to February 9, 1933, the date of his accident and death.

Evidence was further introduced on behalf of appellants, that: deceased had worked for other employers on structural iron work in the year preceding his death and had received from such other employers $9 for an eight-hour day; eight hours was a customary day for all classes of labor in the year preceding the workman's death; five days was a standard working week for both skilled and unskilled labor; pile drivers on the project were given an examination relative to their qualifications as iron workers; with appellee the customary day was one of eight hours and the customary week was one of five or five and one half days; the only place it had worked six days a week was on river improvement work; on this project some men at times worked more than five hours on some days, due to weather conditions preventing their working five hours on certain other days; in no event could the total number of hours which the deceased worked exceed thirty hours per week.

Appellant's contend the wages received by deceased as an iron worker, from other employers, during the preceding year should be taken into account in determining proper compensation. It is also urged the forty-eight-hour week would be a proper basis for determining weekly compensation or that at least the award should be fixed on a forty hour week. They contend the provisions of R. S. 1933 Supp. 44-201 approve and recognize an eight-hour day. The intent and purpose of that statute is to prevent the state or municipalities, except in extraordinary emergencies, from compelling labor in excess of eight hours per day. It prescribes for the parties designated only a maximum number of hours per day, in excess of which

they may not contract. In no other sense does that statute attempt to regulate the right of contract.

Two questions require our attention. First, what was the contract? Second, what compensation does the statute provide for the death of the workman? Under the workmen's compensation act, the liability of an employer to his employee is a liability arising out of contract, and the terms of the statute are embodied in the contract. The injured employee must therefore recover upon the contract with his employer. (*Moeser v. Shunk,* 116 Kan. 247, 226 Pac. 784; *Johnson, Guardian, v. Milling Co.,* 116 Kan. 731, 229 Pac. 359; *Ross v. Austin Drilling Co.,* 131 Kan. 824, 293 Pac. 757.)

It follows appellants cannot recover from this employer upon the basis of a former contract deceased had with another employer. His contract with appellee was definite. It was limited to thirty hours per week. The pay at which he was employed and which he accepted was for that of an unskilled workman. The state of Kansas had no choice in fixing the weekly hours of labor on this project. Congress provided the funds for the undertaking as a form of relief to unemployment. The purpose of that congressional act was to provide something for many and not much for a few. This state was not compelled to accept the relief. It could take it or leave it. Having accepted it, the state was obliged to comply with the express conditions attached to it. Appellee was likewise bound under its contract with the highway commission not to provide employment in excess of thirty hours per week to each workman. The workman accepted employment on that basis. He was paid on that basis, and his recovery is restricted accordingly.

How much was it? Appellants rely upon the provisions of R. S. 1933 Supp. 44-511. It is unnecessary to determine what amount appellants could recover under that statute. It does not apply. It became effective November 27, 1933. The accident occurred February 9, 1933. On the latter date appellants' cause of action accrued. (R. S. 1933 Supp. 44-535.) The amount of recovery was controlled by the provisions of chapter 232 of the Laws of 1927. Where death results from injury, section 10, paragraph 2, of the act at that time provided:

"2. If a workman leaves any dependents wholly dependent upon his earnings, a sum equal to three times his average yearly earnings, computed as provided in section eleven (11) of this act, but not exceeding four thousand dollars ($4,000) and not less than fourteen hundred dollars ($1,400)."

The pertinent portions of section eleven of that act provided:

"(b) Where the workman has been employed less than one year by the employer in whose employ he received the injury, 52 times the average weekly amount which, during the twelve months immediately preceding the accident, was being earned by a person in the same grade employed at the same work by the same employer, undiminished by loss due to absence from work on account of illness or other unavoidable cause."

"3. In computing average earnings of a workman under the preceding paragraphs of this section regard shall be had to the earnings for what is commonly regarded as a day's work or a week's work for the employment on which the average earnings are calculated."

On the project in the instant case, a five-hour day and a six-day week was not only regarded as a day's work and as a week's work, respectively, but the total hours of work for any week, under the contract, could not exceed thirty hours. It was definitely fixed by the act of congress, and could not be altered. Deceased had been employed by appellee less than one year. His maximum weekly earnings from the employer in whose employ he received his injury, undiminished by loss due to absence from work on account of illness or unavoidable cause, was $15. It would therefore appear appellants are entitled to fifty-two times the average weekly earnings, multiplied by three or a total sum of $2,340, plus a reasonable expense of burial not exceeding $150.

We have carefully examined the Kansas decisions to which appellants direct our attention. (*Bundy v. Products Co.*, 103 Kan. 40, 172 Pac. 1020; *McKinstry v. Coal Co.*, 116 Kan. 192, 225 Pac. 743; *Miles v. Wyatt*, 138 Kan. 863, 28 P. 2d 748; *Horn v. Elm Branch Coal Co.*, 141 Kan. 518, 41 P. 2d 751.) They are not relief employment cases. Furthermore, the facts in those cases, in other respects, are not analogous to those in the instant case. The decisions are not helpful here.

Our attention is also directed to the case of *Modin v. City Land Co.*, 189 Minn. 517, 250 N. W. 73, and *Drum v. Omaha Steel Works*, 129 Neb. 273, 261 N. W. 351. In the Modin case it was said:

"Weekly wage of one employed by city at $4 per day for three days per week for two weeks to relieve unemployment was properly determined by multiplying daily wage by five and one half." (Headnote.)

The decision in that case rested upon a statute. It provided the weekly wage should not be less than five and one half times the daily wage. The workman was employed on relief for three days a week. Logically the proper method of determining the week's wages was by multiplying the daily wage by five and one half.

The Drum case also arose out of a federal relief project. The supreme court of Nebraska reversed the judgment of the trial court, and held that a workman was obliged to recover on his contract, which was for thirty hours a week at 50 cents an hour, and the weekly wage was therefore $15.

In the course of the opinion the court said:

"There was a very earnest discussion by the attorney for the appellee relative to the beneficent purposes of the workmen's compensation act. This court has always given the workmen's compensation act a liberal interpretation that it might accomplish the purpose and intention of the legislature. But, after all, the relief available must be provided by the statute. The statute fixes the liability of the employer. The evidence determines the contract of hiring in force at the time of the accident. It was for a thirty-hour week at fifty cents an hour." (p. 352.)

So in this case the weekly wage based upon the contract of the parties was $15. To be sure, that is a small amount, but we are not permitted to make a new contract for the parties nor read into the statutes in force at the time of the accident something clearly not intended. The judgment must therefore be affirmed. It is so ordered.