No. 34,537

Clarence Omer Chamberlain, *Appellee and Cross-appellant*, v. Bowersock Mills and Power Company, *Appellant*.

(96 P. 2d 684)

Opinion filed December 9, 1939.

*R. E. Melvin* and *George K. Melvin*, both of Lawrence, for the appellant.
*J. J. Schenck* and *C. P. Schenck*, both of Topeka, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action under the workmen's compensation act. The compensation commissioner found for the plaintiff. On appeal the district court found in part for the claimant and in part

for the respondent. The case is here on appeal by the respondent and cross-appeal by the claimant.

Chamberlain, the claimant, was employed by the Bowersock Mills and Power Company, a corporation located at Lawrence, and. went to work on Thursday, June 2, 1938. On June 3, while he and other employees were moving some machinery, he suffered an injury to the third finger of his hand. The skin on the finger was broken and a cut made about an inch long. He continued to work that day and the next day, June 4, and then returned to his home in Topeka. On Sunday he consulted Dr. C. K. Schaffer, of Topeka, and Doctor Schaffer found evidence of infection. Chamberlain was taken to a Topeka hospital, where he received treatment. The infection grew worse, abscesses developed and several operations, one of them under a general anaesthetic, were performed. Claim for compensation was duly made. The district court found that the medical treatments were authorized by the respondent, that notice of the claim for compensation was made within the ninety days provided by the statute, and that the claimant's injury consisted of an injury to the third finger of the right hand resulting in the loss of the use of the finger. The court found that the claimant was entitled to twenty weeks' compensation for the total loss of the use of the finger, the same to be treated as a scheduled injury, and was further entitled to two weeks' additional compensation for the healing period, making a total of twenty-two weeks, or a total of $396. It was agreed that if he was entitled to compensation it should be fixed at the rate of $18 a week. The court also allowed the hospital and medical bills.

The respondent company makes three principal contentions:

(1) That the medical services were not authorized by the company, because Goodrich, the man who is said to have authorized them, had no authority to do so. It is admitted that the furnishing of medical and hospital attention constitutes payment. of compensation, and that if the company did authorize such services a notice of the claim was filed within time. If the company did not authorize them, then the notice, not having been filed within ninety days after the injury, was filed too late.

(2) That the court's finding that claimant suffered a total loss of the use of the third finger of his right hand as a scheduled injury was not supported by evidence, and that the court should have found from the testimony that the claimant was entitled to ten percent of the loss of the use of the third, fourth and fifth fingers of the right hand.

(3) That if the evidence failed to show a scheduled injury, then the court should have allowed compensation for total temporary disability only from June 6 to August 6, and should have disallowed all other claims except medical.

The claimant makes two principal contentions: (1) that he was also entitled to compensation for loss of the use of his fourth finger; and (2) that the court erred in holding that the award paid on the loss of the use of the third finger, being a scheduled injury under the statute, prevented any allowance for temporary total disability, and that upon the record he was entitled to such allowance.

We shall consider these contentions in their order.

(1) Were the representations and acts of Goodrich authorizing medical treatment and hospital care binding upon the company? The company operates the mill where the claimant was employed and also operates a grain storage elevator, a bakery and other business concerns. Goodrich was in charge of the mill operations and sales. Respondent refers to him as superintendent. He had power to employ helpers, and it is admitted that he did hire the plaintiff, though respondent contends it was done after consultation with Jackmans, who was vice-president of the company. Chamberlain testified that he did not see Goodrich the day his hand was injured, as Goodrich was out of town; that he saw Goodrich on Saturday, and Goodrich mentioned the accident. He testified that he went back to Lawrence and saw Goodrich again on Monday and told him that he was living at Topeka and wanted to be treated by his family doctor and thus save the expense of going back and forth to Lawrence, and asked him if he could keep the Topeka doctor, and Goodrich said it would be all right. He testified that when the injury took place no one at the mill told him to see the company doctor, but someone made the remark that he thought he ought to see a doctor, but he didn't think at the time it was necessary. He testified that when he was in Doctor Schaffer's office in Topeka, Doctor Schaffer called Goodrich over the telephone and told Goodrich that the hand wasn't getting along right and that he should be taken to the hospital. Doctor Schaffer testified that he saw Chamberlain first on June 5 at his office and every day thereafter until the 9th, that when he found that the infection was spreading down into the wrist he called Goodrich over the phone and asked permission to take him to the hospital, and that he told him to go ahead and take care of him, as he wanted Chamberlain to have the best of care. There is no con-

tention that Goodrich told Chamberlain or Doctor Schaffer that he did not have authority to authorize medical or hospital care or that he or anyone at the mill referred Chamberlain or Doctor Schaffer to anyone who would have such authority. The court found, as a matter of fact, that the company did authorize the medical care and the hospital treatment, and we think there is ample evidence to support that finding.

The appellant cites several decisions of this court and relies principally upon *St. Mary's Academy v. Railways Ice Co.*, 138 Kan. 340, 26 P. 2d 278. In that case the workman was injured at night while working at the ice plant and was ordered sent to the hospital by the night engineer who was in charge of the plant at night. It was held that the hospital had no right to rely upon the act of the night engineer as binding upon the company to pay the hospital bill. There is nothing, however, in the record to show that the night engineer had any authority to hire employees or any authority other than having charge of the plant at night. It is not comparable to the instant case, where Goodrich was in charge of mill operations and sales and was clothed with the power to hire employees. The fact that he consulted or advised with some superior officer in the company does not change the situation. *St. Marys Academy v. Railways Ice Co.*, supra, cited *A. & P Rld. Co. v. Reisner*, 18 Kan. 458, in support of the proposition that "such an employee has no authority to bind his employer to pay medical or hospital bills." The case cited held that a station agent of a railroad company was without authority to employ a hotel keeper to furnish board and lodging to a disabled brakeman. No contention was made that a station agent had authority to hire the brakeman or that the brakeman was in any way under his supervision.

Respondent cites *Townsend v. Railway Co.*, 88 Kan. 260, 128 Pac. 389, which held that an act was within the scope of an agent's authority when a reasonably prudent person having knowledge of the nature and usages of the business would be justified in supposing that he is authorized to perform it. Under this principle respondent contends that no reasonably prudent person who had worked at the mill for only one day would be justified in assuming that Goodrich had authority to bind the mill in regard to medical treatment. We cannot agree with that contention. Under the facts heretofore recited we think that Chamberlain was amply justified in assuming that when Goodrich authorized the treatment he was acting within his authority.

(2) Was there evidence sufficient to support an award based on total loss of the use of the third finger of the right hand?

On this question respondent's argument is based on the report and testimony of Doctor Schaffer with reference to the injury to the fingers of the right hand. On September 8, Doctor Schaffer made a report from which the following is taken:

"Will injury result in permanent defect? Some.

"If so, what? Inability to flex last three fingers of right hand normally.

"In case of member give: (1) Period of total loss of use. A. To August 6, 1938. (2) Resultant percentage of permanent loss of use of member. A. Ten percent."

On cross-examination he testified as follows:

"I haven't any idea at the present time, as to the extent of the disability of the ring finger. I don't do enough compensation work to know how they figure these disability things. I wouldn't want to say. There is some disability there but I don't know how to figure it. I don't remember what I said in the report I made on September 8, as to the extent of the disability. This that you hand me is my report and my signature. In the report I said, 'The injury will result in some permanent defect. Unable to flex last three fingers of right hand normally. Period of total loss of use, to August 6, 1938. Resultant percentage of permanent loss of use of member, ten percent.'

"That is what I said, but I don't know. That is a guess on my part. That is the only estimate I have made. That is the only one I would make now and I don't know whether that is right or not. That ten percent disability was to the three fingers. Those three fingers of the right hand we are talking about. Two of those fingers are not as bad as the other.

"Q. What is the percentage of loss in your opinion of the bad one, the ring finger? A. I tell you I don't know.

"Q. Those things as time goes on become more flexible, don't they? A. In a younger person, I would say yes. In him, I can't tell you what it will do.

"Q. You don't know? A. No.

"Q. Is it perfectly possible those fingers will straighten themselves out so that he can go ahead and use them from now on? A. I doubt it very much.

"Q. Will it in your opinion do that, with exception of the ring finger? A. I doubt that. They will get some better, but I doubt if they will ever get back to normal.

"Q (By the commissioner). Is Mr. Chamberlain able at this time to close his hand and make a fist out of it? A. I don't think so.

"Q (By the commissioner). Do you think he will ever be able to do that, insofar as it relates to the ring and little finger? A. I doubt if he will."

He further testified:

"He cannot bend the little finger and ring finger of the right hand very much. *I doubt if Mr. Chamberlain will ever regain the use of his right hand so he can close the third and fourth fingers of that hand down on a hammer or tool of that kind so he could grip it firmly and be able to use it.* I don't think the other finger besides the ring finger will ever get back to normal. *Mr.*

*Chamberlain is not able to close his hand* and make a fist out of it *and I do not believe he ever will.*"

On this testimony respondent contends that the court had no evidence to support total disability of the third finger. It argues that since Doctor Schaffer testified to a ten percent disability for each of the three fingers, the maximum that could be awarded would be thirty percent for the one finger. Doctor Schaffer testified not only with reference to the three fingers, but he testified that he doubted whether Chamberlain would ever regain the use of his right hand so that he could close the third and fourth fingers down on a hammer or tool of that kind so that he could grip it firmly and be able to use it. Upon this testimony instead of computing the award on the basis of the third finger an award might have been made based on partial disability of the whole hand. Approximately fourteen percent disability of the hand would have reached the same result in compensation. We are not prepared to say that the computation of compensation on the basis of total disability of the third finger constitutes reversible error. The disability of the finger constituted the principal cause of the permanent loss of the full use of the hand, and an award based on full loss of the third finger is not excessive.

The conclusions reached with reference to the first two contentions of the respondent make it unnecessary to deal with the respondent's other assignments of error.

We come to the contentions of the claimant:

(1) Was the claimant also entitled, on the evidence, to an award based upon the disability of the fourth finger? It is true, as stated by the claimant, that there was testimony concerning the limited use of the little finger. We think, however, that this question has been sufficiently covered in our discussion of respondent's second contention, and that there was no error in not making an award based on the little finger.

(2) Did the court err in holding that an award based on a scheduled injury prevented allowance for temporary total disability during the weeks when the claimant was unable to work?

The issue turns on the proper interpretation of that portion of subdivision (21) of G. S. 1935, 44-510, which reads as follows:

"(21) Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in paragraph 1 of this section and no additional compensation shall be allowable or payable *for either temporary or permanent disability:* . . ." (Italics ours.)

We do not find this question free from difficulty. The language of the statute quoted appeared first as a part of chapter 232, Laws of 1927. Prior thereto the statute had provided that "the compensation for the foregoing specific injuries shall be in lieu of all other compensation, except the benefits provided in paragraph 1 of this section" (paragraph 1 referred to medical and hospital treatment, etc.). The substantially new words added in 1927 were "and no additional compensation shall be allowable or payable for either temporary or permanent disability." The trial court, disagreeing with the position taken by the compensation commissioner, held that having made an award for a scheduled injury, based on the loss of the third finger, he could not under this limitation of the statute make an award covering the eight weeks of temporary total disability. Does the language of the statute require that rigid interpretation? If that is the only interpretation which can reasonably be given, then an award based on a scheduled injury, no matter how minor it might be, would preclude an allowance for total disability regardless of how long the period of total disability might have lasted. Under that interpretation an injured person might be confined in a hospital for a year or more, and yet suffer a very minor permanent injury—let us say of only ten percent, for a little finger—but if an award be made for the scheduled injury to the finger, he would be precluded from any compensation for the long period of total disability.

Before examining this question more closely let us note clearly the instant situation. The claimant injured a finger. In and of itself the injury might not have materially affected any other part of his body, although the injury to the finger might be permanent. But he suffered a virulent infection of a character which Doctor Schaffer testified is frequently found in flour mills. This infection spread to his hand and threatened the loss of his right arm and even spread to his left arm. The infection necessitated several operations and kept the patient in the hospital for many weeks. Two employees might have suffered the same injury to a finger, and one get the infection and the other not get it. The infection, it is true, is clearly traceable to the injury which furnished the occasion for its entering the body, but by no means does such infection always take place after such injury. In fact it is the exception rather than the rule. Under these facts are we required to say that after the patient had been confined in the hospital and totally disabled for many weeks

and that thereafter his only permanent disability was the partial loss of the use of the third finger, compensation for the latter precludes allowance for the former? Such an illogical result should not be reached unless the language of the statute unquestionably requires it.

One of the principal cases relied upon by the respondent is the case of *Neuhaus v. Hope Engineering Co.*, 132 Kan. 72, 294 Pac. 655. In that case the workman received an injury to the little finger of his right hand. The compensation commissioner allowed compensation for temporary total disability and for permanent partial loss of the use of the finger. The district court allowed: (a) eight weeks' total disability, (b) fifty percent permanent partial loss of the little finger, and (c) twenty-five percent permanent partial loss of the use of the right hand. It was stated in the opinion that "the question is whether he can recover for permanent partial loss of the use of *both finger and the hand*," and it was held that under the limitation of the statute he could not recover for both. The court said:

"Under this schedule the claimant suffered permanent partial loss of use of the fourth or little finger. The injury was a specific injury under the schedule. He was entitled to compensation according to the schedule, and was allowed compensation for that injury according to the schedule. Can the claimant move up one anatomical step, and successfully contend his disability consists in part in loss of use of the metacarpus, or hand proper, which was not injured, and which is rated much higher than loss of use of a finger? Under the old law he could." (p. 74.)

The court then held that the provisions of paragraph (21) *supra,* contained in the revision of 1927, *prevented an award based on both the finger and the hand.* The claimant's hand was not injured other than the injury to the finger, and the court said:

"Compensation for permanent partial loss of use of the little finger is exclusive of all other compensation for injury to that member, and no additional compensation may be allowed for disability of the hand." (p. 75.)

"The manifest purpose," said the opinion "was to stop the pyramiding of compensation under this court's interpretation of the old law in the cases which have been referred to." It is clear in that case an allowance for both the hand and the finger would have constituted a "pyramiding of compensation." But what was the final result reached by the decision? The judgment of the district court was reversed and the cause remanded with directions to render judgment in accordance with the award of the commissioner of compen-

sation. Accordingly, the claimant was *allowed compensation both for temporary total disability and for permanent partial loss of the use of the finger.* While some of the broad language used in the opinion seems to support the contention of the respondent here, the disposition of the case is squarely contrary to respondent's contention.

The Neuhaus case, *supra,* was discussed in the case of *Thompson v. General Machine & Tool Co.,* 135 Kan. 705, 11 P. 2d 685. In that case an award for temporary total disability for seventy weeks was made and a finding that thereafter total disability would cease and the workman suffer a thirty-three and one-third percent permanent disability of his left arm. While the contentions do not entirely parallel those of the instant case, the same question that is here presented was raised and discussed. Referring to paragraph 21, *supra,* and to the holding of the Neuhaus case, this court said:

"This provision is not applicable to the facts in this case and was enacted to overcome a defect in the old statute allowing double compensation for the same disability, or what has been termed as a pyramiding of compensation. It was held that when compensation was allowed for the loss of a finger, a part of the hand, no compensation could be allowed for the hand which was not otherwise injured. The *language used,* that the allowance was exclusive of all other compensation, *means that it is exclusive for the specific injury.* That is, that the specific loss of the finger was exclusive of other compensation for that specific loss. For instance, it means that compensation is not allowable for the loss of a leg and also of a foot which was a part of the leg, nor could there be an allowance for the loss of a hand and also the fingers on it. Nor can the loss of a finger for which payment has been made under the schedule be added to the compensation for temporary or permanent disability *for the particular injury of the finger."* (p. 708.)

Thus, an award including compensation both for total temporary disability and for a scheduled injury to the arm was permitted to stand.

A comparable result, also incompatible with respondent's contention in this case, was reached in the case of *Schweiger v. Sheridan Coal Co.,* 132 Kan. 798, 297 Pac. 688. In that case the only injury suffered by the workman was an injury to his right eye. An award was made based on scheduled injury to the right eye, but the claimant urged that he was also entitled to compensation based on injuries to the left eye. The alleged injury to the left eye did not occur at the time of the accident but developed sometime later, and the claim was that it resulted sympathetically from the injury to the right eye. Compensation was not allowed for the left eye, but this

court did allow compensation for the eight weeks of total temporary disability which followed the accident, in addition to that for the right eye.

All the Kansas cases cited by respondent have been examined but we find none of them inconsistent with the conclusion reached herein.

Respondent cites, for instance, *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228. In that case the claimant was awarded sixty percent loss of the use of a foot. He contended that the allowance should have been based on permanent partial disability instead of an award for the scheduled injury. The case is not applicable here. The same may be said for the case of *Morris v. Garden City Co.*, 144 Kan. 790, 62 P. 2d 920, which involved a determination not applicable to the instant case.

Respondent cites *Gallivan v. Swift & Co.*, 136 Kan. 234, 14 P. 2d 665. This is another case where this court refused to allow compensation for both scheduled injury to the third and fourth fingers of a hand, and for injury to the hand. The only permanent injury to the hand was the injury to the fingers. This was clearly another case of attempted "pyramiding of compensation" which the provision of the 1927 act was designed to prevent.

In the case of *Resnar v. Wilbert & Schreeb Coal Co.*, 132 Kan. 806, 297 Pac. 429, the workman was injured by a large rock which fell upon him. As a result he was totally incapacitated for six months, but the only permanent injury which resulted was the loss of the use of his left foot. Compensation was allowed both for the scheduled injury to the foot and for the temporary total disability.

Many cases have been cited from other states, both by appellant and appellee, but they are not very helpful here since they are all based upon particular statutes. Most of them are based upon language substantially as follows:

"The compensation for the foregoing specific injuries shall be in lieu of all other compensation except the benefits provided for medical and hospital bills."

Some courts in interpreting and applying such language have permitted awards for both temporary, partial or total disability and for scheduled injuries, while others have taken the opposite view. Among those permitting awards for both are Oklahoma, Texas, Georgia and Virginia. New York and Pennsylvania are among the states taking the other view. (See 33 Fourth Dec. Dig., 730-732.)

In the instant case an allowance both for temporary total disability and for the subsequent permanent scheduled injury to the fin-

ger certainly would not constitute any "pyramiding of compensation." The permanent disability of the finger is something which followed the termination of the period of total disability. We believe that the views expressed in *Thompson v. General Machine & Tool Co.*, supra, and the result reached in both that case and the Neuhaus case, *supra*, which are in line with the liberal construction placed by other courts upon statutes quite similar, represent the sounder view.

The rigid construction contended for by the respondent would seem equally to apply to a case where in the same accident the workman suffered both a permanent scheduled injury and another injury which caused total or partial temporary disability, but left no permanent ill effect. In other words, if respondent's interpretation is correct, an award for a scheduled injury would preclude any other compensation, even though there had been another and separate injury in the same accident. Admittedly, respondent does not so contend, and many decisions of this court negative such a result. We only suggest, incidentally, that such a result would logically flow from literal application of respondent's interpretation.

While the language of our statute might have been better framed, its purpose, in our opinion, was solely to prevent the "pyramiding of compensation"—such as an award for both hand and finger when the only injury to the hand was the injury to the finger. In the instant case the total temporary disability was the result of the virulent infection which developed, and while it was caused or occasioned by the injury to the finger, it was something quite apart from the permanent disability of the finger after the total disability caused by the infection had terminated. In other words, as far as the permanent disability of the finger is concerned, an allowance for the temporary total disability did not constitute an "additional compensation." We think the purpose of the statutory limitation was to prevent "additional compensation" directly related to or based upon the permanent injury for which allowance is made under the schedule. The rigid interpretation urged by the respondent would lead to wholly illogical results, and we do not think the statute requires such an interpretation. Moreover, this court has frequently said that the workmen's compensation act should be liberally construed to effectuate its purposes. (*Roberts v. City of Ottawa*, 101 Kan. 228, 165 Pac: 869; *Palmer v. Fincke*, 122 Kan. 825, 253 Pac. 583; *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 200, 34 P. 2d 542.)

In accordance with the conclusions reached, we find the award made by the court should stand, but that the court erred in refusing to include an allowance based upon temporary total disability. The cause is remanded with directions to add to the award already made an allowance based on temporary total disability from June 6, 1938, to August 6, 1938.