No. 33,045

EARL BAKER, *Appellee*, v. THE ST. LOUIS SMELTING & REFINING
COMPANY, *Appellant*.

(65 P. 2d 284)

Opin-
ion filed March 6, 1937.

*Al. F. Williams* and *Don H. Elleman,* both of Columbus, for the appellant.
*Sylvan Bruner,* of Pittsburg, and *Louis Wolf,* of Joplin, Mo., for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was a proceeding under the workmen's compensation act.

The question presented on this appeal arises thus: On the hearing before the commissioner and after both claimant and respondent had rested, respondent moved for the appointment of a neutral physician to examine claimant. The motion was allowed, the exami-

nation had and written report made. Thereafter respondent asked permission to cross-examine the neutral physician, which was granted, and at such examination one of the physicians testified concerning particular physical conditions not theretofore mentioned. Thereafter, respondent moved for an order reopening the hearing to permit it to introduce further evidence. This motion was denied, and the award complained of was made. The details of the matters above noted will be mentioned later. On appeal to the district court, respondent moved for an order to reverse the order of the commissioner and to remand the matter to the commissioner with directions to. reopen, it being there contended that respondent had not had its day in court and that the denial of its right to make a further showing was in violation of its constitutional rights in that it was deprived of its property without due process of law. The district court denied the motion, and after due hearing found generally for the claimant and against respondent, and affirmed and approved the award made. The appeal to this court followed. The hearing before the commission was on December 19, 1935. The alleged injury occurred April 11, 1935, and thereafter respondent paid certain medical and hospital bills, as well as compensation until October 22, 1935, when it ceased. At the hearing before the commissioner, it was stipulated the sole question at issue was the amount, nature and extent of disability, if any, of the claimant after October 22, 1935.

Our review of the proceedings before the commissioner, and of the evidence offered, will not be complete but sufficient only to show the basis of the appellant's complaint. The claimant stated he was employed in shoveling and loading ore in cans which were hauled on trucks on rail tracks; that a truck with a loaded can left the track, and in an effort to replace it his foot slipped and the can struck his back. He stated the injury was to his back and that since he had done certain things at the doctor's order, had tried to work, but that he could do no work requiring him to lift or stand; that he had pain across the small of his back and down into his hips and knees; and that he did not sleep well and suffered some from headaches. He called as a witness Doctor Roe, a chiropractor who testified that he had examined claimant on December 11, 1935, and had taken X-ray pictures of his back, and had made an examination of his lumbar and pelvic regions and also his legs. Among other things, he said Baker's posture was tilting forward, that there was involve-

ment of the muscles of his back which affected his nerves, and in his opinion claimant was unable to perform manual labor and would continue indefinitely to be unable to labor. Claimant rested and the respondent then offered the testimony of three physicians. Doctor Ralston identified certain X-ray pictures of claimant's lumbar region and sacrum, one having been taken March 22, 1934, before the injury, the other May 13, 1935. Doctor Connell examined claimant and took X-ray pictures on April 11, 1935. He testified as to his comparisons of the various pictures and that the picture of April 11, 1935, showed some bone pathology or abnormal conditions, but that he could determine no difference in the picture taken by Doctor Ralston in 1934. The picture also showed that claimant had a congenital anomaly in that he had six instead of the usual five lumbar vertebrae. He further stated that, aside from the abnormality and the bone pathology as shown by the various X rays, claimant was a normal man, and that he did not find any condition in claimant's back that could be attributed to any alleged trauma received by claimant at the time claimed. He further stated he did not believe the six lumbar vertebrae between the twelfth dorsal vertebra and the sacrum made more difference than a five lumbar vertebrae back. After some testimony with reference to inflammation of the spine, he stated that where there is activation or aggravation of an osteoarthritic spine by injury it makes itself known by pain, and that if claimant's pain is as severe as he says and he is sincere, he is not able to work. The doctor stated that in his opinion claimant was not suffering from osteoarthritis in the region where he complained of pain; that he complained of pain in the sacroiliac region. Doctor Browne stated he had examined claimant August 30, 1935. He was examined concerning the various X-ray pictures. He again examined claimant October 18, 1935, and stated he was then in practically perfect physical condition. His judgment, based on the X rays and his examinations, was that claimant was not suffering from any disability as the result of accident; and that he believed him able to go to work. With reference to the X-ray pictures, he testified they showed evidence of hypertrophic osteoarthritis, more especially in relation to the lower part of the fourth and the upper part of the fifth lumbar vertebra; that the picture of May, 1935, showed the condition had obtained for some time and the picture of March, 1934, showed practically the same condition.

It was stipulated that if Doctor Russell were present his testimony would be to the same effect as that of Doctor Connell. The respondent rested his case, claimant introduced some rebuttal, which will not be noticed, and rested. The respondent then made a formal request for appointment of a neutral physician and the commissioner appointed Doctor Regier and Doctor Spake, both of Kansas City, who each examined claimant and made written reports. Doctor Spake found normal movements in claimant's back and spine and no marked abnormalities and no external evidence of injury; that the symptoms were all subjective, and that claimant had focal infection of the tonsils which should be corrected by an operation. Doctor Regier reported that in his opinion heavy lifting and the nature of the alleged accident at the time brought forth an existing condition and aggravated it, producing an abnormal rotation of the spine, and that in his opinion claimant was totally disabled from working at the time and would continue so for another year, would for a year thereafter have a fifty percent partial disability and thereafter be able to work. Respondent thereupon asked permission to cross-examine the neutral physicians, which request was allowed, and thereafter on February 8, 1936, it did cross-examine Doctor Regier. The cross-examination was long and detailed. Doctor Regier testified as to the X-ray pictures heretofore mentioned as well as to some he had taken, gave his opinion about claimant's spine and the abnormalities mentioned in testimony of other physicians and stated he found there was a rotation of the upper lumbar vertebrae of the spine. He also found the articulations between the sacrum or iliac spread out more than they normally should be. "I found no condition nor bone pathology shown by any of these X-ray pictures that in my opinion was directly caused or produced by trauma," and that claimant had a weak back and had had it long previous to the injury. On cross-examination by claimant, he stated claimant had definite hypertrophic changes in the lumbar vertebrae which may be activated or aggravated by being injured; that the presence of pain in that region would be evidence of injury if the pain did not exist previous to the injury and came on following the injury. He found that claimant had chronic inflammation of the vertebrae which is usually found where there is a rotation with osteal spurs on the edge of the vertebrae. The examination covered many other phases which are not noted.

Conceiving that the testimony of Doctor Regier introduced a

theory entirely foreign to that previously advanced by claimant, and that respondent had had no opportunity to meet it or offer evidence in defense, respondent prayed for an order reopening the hearing in order that it might introduce its evidence upon the matters included in Doctor Regier's testimony. This request was denied. The record shows that during the cross-examination respondent's counsel had with him two doctors—presumably to assist him in framing his questions. At the time the request was made, respondent made no offer to prove any specific facts, did not present any witnesses nor did it thereafter tender any evidence by deposition or affidavit. (See *Fougnie v. Wilbert & Schreeb Coal Co.*, 130 Kan. 410, 413, 286 Pac. 396.) After denying respondent's request, the commissioner made his award, in which the history of the proceedings is set forth. It was noted that conflicting testimony was offered at the hearing and at its close respondent requested appointment of a neutral physician under G. S. 1935, 44-516; that such appointment was made, the neutral physicians reported and were cross-examined; that the testimony should receive the commissioner's attention. It was stated in the award:

"The weight of the medical testimony warrants a finding and the commissioner finds that at the time of the hearing claimant was wholly unable to perform any kind of manual labor; that such disability was the result of the accidental injury received in the course of his employment with the respondent, . . ."

There follows a statement referring specifically to Doctor Regier's testimony. There being no dispute as to the correctness of the amount of the award, it is not necessary that other portions of the award be mentioned.

The appeal to the district court and its result has heretofore been mentioned. On the appeal here two contentions are made:

1. That the refusal of the commissioner to permit the respondent to offer testimony controverting the testimony of the neutral physician, Regier, violated the rights of respondent under section 1 of the fourteenth amendment to the constitution of the United States.

2. That the refusal above noted violated the rights of the respondent under section 1 of the bill of rights of the state of Kansas.

The essence of appellant's argument is that because it was not permitted to have the hearing reopened and to offer testimony tending to controvert the testimony of the neutral physician Regier, it has been deprived of its property without due process of law.

We shall not discuss whether Doctor Regier's testimony did introduce a new element in the case or merely gave a different cause for the condition testified to in claimant's case in chief. Preliminary to a discussion of appellant's contention, we again call attention to the circumstances out of which it arises. At the hearing claimant offered his proof and rested, respondent offered its defense and rested and claimant offered some rebuttal and rested. Thereafter respondent, not claimant, requested the appointment of a neutral physician who duly made his examination and written report. Respondent's request for permission to cross-examine was granted and the examination allowed. Respondent then asked that the hearing be reopened and that it be permitted to offer further proof. The denial of this request is the basis of this appeal. While the workmen's compensation act provides that technical rules of procedure shall not prevail (G. S. 1935, 44-523), it is apparent from the entire act that a rather speedy determination is to be made of all claims, the act providing that parties shall be given reasonable opportunity to present their evidence and the award made and filed within thirty days after the hearing (G. S. 1935, 44-523); that appeals to the district court from the decision and rulings of the commission must be perfected in twenty days and appeals from the findings and order of the district court to the supreme court must be perfected in twenty days, appeals in each instance being entitled to precedence as provided in G. S. 1935, 44-556. Under G. S. 1935, 44-516, where there is dispute as to the injury, upon request of either party, the commission shall appoint a neutral physician, as was done here. Under G. S. 1935, 44-519, the certificate or report of the physician would be competent only when supported by competent admissible evidence of such physician, and for this reason appellant's request that it be allowed to cross-examine was properly allowed. There is, however, no affirmative provision that either party not satisfied with the findings of the neutral physician may have the hearing continued to permit controverting evidence or to permit the other party to supplement the neutral physician's testimony with supporting testimony. It would seem that if such a result necessarily followed in order there might be due process of law, that the continued dispute would be grounds for appointment of other and further neutral physicians, and that the hearings could thus be extended and continued indefinitely. But without deciding definitely when the commissioner would be warranted in closing the hearing, we take up the proposi-

tion whether his refusal to do so in this case violated the constitutional rights of the respondent.

We agree with appellant that while constitutional guaranties of due process of law do not require any particular form of action or method of procedure, they do require that some adequate and appropriate remedy be afforded for the vindication of property rights (12 C. J. 1220), and that every man is entitled to his day in court, and "That to condemn without a hearing is repugnant to the due-process clause of the fourteenth amendment needs nothing but statement." (*Riverside Mills v. Menefee*, 237 U. S. 189, 35 S. Ct. 579, 59 L. Ed. 910.) And that many other authorities so hold, but that they are of any force or effect here does not follow.

The first workmen's compensation act in Kansas was enacted in 1911. It has been amended from time to time in certain particulars which are not of present importance. Under that act (Laws 1911, ch. 218, sec. 18), provision was made for appointment of a neutral physician. Subsequent amendments of the section have not changed its force so far as the instant case is concerned. One of the early cases arising under the act was *Shade v. Cement Co.*, 92 Kan. 146, 139 Pac. 1193, where it was held the remedy afforded by the act was exclusive, a holding which has been followed without exception. Recent cases holding to the same effect but with respect to the statute as amended and now in force are *Fougnie v. Wilbert & Schreeb Coal Co.*, 130 Kan. 410, 286 Pac. 396; *Cruse v. Chicago, R. I. & P. Rly. Co.*, 138 Kan. 117, 23 P. 2d 471, and *Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 41 P. 2d 748, and 141 Kan. 748, 43 P. 2d 786. A rehearing in the Shade case, *supra*, was allowed in which it was urged the act violated the fourteenth amendment to the United States constitution because it deprived persons of their property without due process of law, section 18 of our state bill of rights for a similar reason, article II, section 16 of our state constitution for technical difficulties with its title, and because it deprived a citizen of a right of trial by jury. (*Shade v. Cement Co.*, 93 Kan. 257, 144 Pac. 249.) This court concluded the contentions urged were not sound, saying in part:

"The provisions of the federal and state constitutions guaranteeing due process and equal protection of law invoked by the plaintiff are not violated by this statute, as decided in many jurisdictions in opinions so exhaustive of the subject and so convincing in reason that we are content to make brief references to specific objections, and to a few of the principles upon which these objections are based. . . . The objection based upon the supposed depriva-

tion of a right of trial by jury is equally untenable, as determined in many adjudicated cases. The same is true of the arbitration feature and the rules for determining compensation. Without reviewing seriatim all the specific objections made to this statute under the general charge that it violates constitutional safeguards, it is sufficient to say that they have all been met in judicial decisions in other jurisdictions after the most thorough and patient examination. It seems unnecessary, now that the validity of such laws has been so generally maintained, to review the many adjudicated cases, and restate in detail the well-settled principles upon which they are based. Briefly, it may be said that the operation of the system of compensation provided by the statute rests upon the free consent of employer and employee, given in the manner provided by the act. Without such consent on his part the employee retains all his remedies under common and statutory law." (pp. 259, 260.)

As is noted in the last quotation, the operation of the system of compensation rests upon the free consent of the employer and employee given in the manner provided in the act. That the liability of an employer to his employee under the act is a liability arising on contract has been repeatedly held. (See *Moeser v. Shunk*, 116 Kan. 247, 226 Pac. 784; *Johnson, Guardian, v. Milling Co.*, 116 Kan. 731, 229 Pac. 359; *Chappell v. Morris & Co.*, 118 Kan. 210, 235 Pac. 117; *McDonnell v. Swift & Co.*, 124 Kan. 327, 259 Pac. 695; *Ross v. Austin Drilling Co.*, 131 Kan. 824, 293 Pac. 757; *Workman v. Kansas City Bridge Co.*, 144 Kan. 139, 58 P. 2d 90.) In *Smith v. Packing Co.*, 115 Kan. 874, 225 Pac. 110, where contention was made that a certain interpretation of the act would result in violation of the clause of the fourteenth amendment relating to due process of law, it was held:

"If the provisions of the workmen's compensation act as interpreted by this court, under which a larger amount is sometimes allowed for an injury to a limb or other member than for its loss, would otherwise make it violative of the fourteenth amendment to the federal constitution, that result is prevented by the fact that the statute binds only those who have voluntarily elected to accept its terms." (Syl.)

And in the opinion attention was directed to a note in L. R. A. 1916A, 410, 414, that the courts have invariably held that optional statutes do not infringe the due process and equal protection provisions of the constitution. (See the authorities cited in the above note.) Our statute is not compulsory. Provision is made for election not to come within the provisions of the act by the employer (G. S. 1935, 44-542), by the employee (G. S. 1935, 44-543), and by employers not otherwise within its purview to come therein (G. S.

1935, 44-507). In the instant case, there is no contention but that employer and employee are within the act.

The precise question here presented has not been before this court, nor do the briefs or our own research disclose any closely analogous case from any other jurisdiction. On the question, whether if we hold the commissioner did not err in refusing the appellant the right to offer evidence to rebut that of the neutral physician, such holding violates the constitutional rights of appellant, we conclude that the relation existing between the employer and employee with respect to compensation is contractual and as expressed in the statute, compliance with which is optional and not compulsory; that the parties having elected to operate thereunder, their rights are to be determined thereby; that under the statute where dispute as to the injury exists, either party may request appointment of a neutral physician who may be examined to determine his competent admissible testimony, but that the statute not providing therefor, neither party may, as a matter of right, be allowed to have the hearing further continued to offer further testimony, either to controvert or to support the testimony of the neutral physician.

In a supplemental brief, appellant directs our attention to *Willis v. Skelly Oil Co.*, 135 Kan. 543, 11 P. 2d 980, and contends that under its reasoning and holding the hearing before the commissioner was never completed. In the Willis case, the commissioner held that the required demand had not been made and refused to hear evidence as to the claimed injury. That was not the situation here. Appellant had offered the evidence of three physicians personally and it was stipulated another would testify as had one of them. He then rested. Had the hearing stopped then and had the commissioner made the finding he did, that claimant was unable to perform any kind of manual labor, it would have been supported by evidence. The testimony of the neutral physician agreed with that of Doctor Roe that claimant was disabled. He merely gave a different reason for his conclusion. The hearing was not incomplete for that reason. It should be remembered that the purpose of the hearing was to determine whether claimant had suffered injuries and was disabled in such manner that he was entitled to compensation under the act, and not to determine with exactitude whether he suffered from one as distinguished from another particular ailment— or, put another way, the question was whether he was disabled by

injury to his back rather than which particular one of his vertebrae was injured.

The contention that the hearing was not completed before the commissioner cannot be sustained.

The judgment of the lower court is affirmed.