MILTON O. LESLIE, *Appellee,* v. EUGENE C. REYNOLDS and COMMERCIAL STANDARD INSURANCE COMPANY, *Appellants.*

No. 40,139

HAZEL MARIE LESLIE, *Appellee,* v. EUGENE C. REYNOLDS and COMMERCIAL STANDARD INSURANCE COMPANY, *Appellants.*

(295 P. 2d 1076)

Opinion filed April 7, 1956.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Robert J. Hill, Gerrit H. Wormhoudt* and *Theodore C. Geisert,* all of Wichita, were with him on the briefs for the appellants.

*John Callahan,* of Wichita, argued the cause, and *Dale Kidwell, George W. Ball, Jack H. Greene* and *Kenneth M. Nohe,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

FATZER, J.: These appeals arise out of proceedings under the Workmen's Compensation Act. Both respondent employer and his insurance carrier have appealed from judgments allowing recovery to each claimant. Since each appeal involves the same question, they were ordered consolidated in this court.

The record discloses without dispute that respondent Eugene C. Reynolds is the owner of an 850-acre beef and dairy ranch located near Fall River, Kansas; that the claimants, Milton O. Leslie and Hazel Marie Leslie, are husband and wife; that claimant Hazel Marie Leslie is the sister of respondent Reynolds; that during the month of October, 1953, respondent Reynolds entered into an oral contract of hiring with claimants whereby they were jointly employed to operate his ranch. The terms of the contract of hiring were that respondent Reynolds was to pay the claimants jointly a monthly draw of $200, which was subject to being increased during any month if the claimants needed it; to furnish the use of a completely modern house on the ranch, with all utilities paid; to furnish the use of a new automobile for ranch and personal use, with all expenses of operation paid including gas, oil, repairs, insurance and taxes; to furnish all foodstuff grown on the ranch and needed for the preparation of claimants' family meals, including beef, pork, milk, butter, eggs and garden produce; and to further compensate them at the end of each year's operation of the ranch in cash bonuses or in livestock for the work they would do in operating the ranch.

Although the ranch was primarily operated as a Grade-A Dairy, there were pigs, calves, chickens, horses and a large herd of whiteface cows, which the claimants cared for. In addition, the claimants put up hay from the grass land and farmed the tillable land of the ranch.

Pursuant to the contract of hiring, claimants and their family moved to the ranch during October, 1953, and operated it in a manner satisfactory to respondent Reynolds and in accordance with the contract of hiring. On November 6, 1954, claimants were going to Wichita on ranch business when both were severely injured in an automobile accident.

At a hearing before the Workmen's Compensation Commissioner on April 26, 1955, the Commissioner found, in addition to the admission of the parties, that the claimants were injured by accident arising out of and in the course of their employment, and that both claimants received as wages under the contract of hiring with respondent Reynolds, the following items: $200 per month cash; $85 per month house rent, with utilities paid; $26.25 per month for automobile operations, all of which totaled $311.25 per month, or $71.82 per week. In addition to this amount, and under the contract of hiring, claimants received foodstuff (meat and other items)

in a sum equal to $25 per week, and a bonus at the end of 1954, which figured at the rate of $15.38 per week, for a total weekly wage of $112.20, of which one-half belonged to each claimant, and that the average weekly wage of each claimant was $56.10.

The Commissioner further found that Milton O. Leslie was totally and permanently disabled; that he was entitled to receive compensation at the rate of $28 per week for a period not to exceed 415 weeks commencing November 13, 1954; that compensation was due and owing from November 13, 1954, to May 28, 1955, a period of twenty-eight (28) weeks at $28 per week, totaling in the sum of $784, which should be paid in one lump sum and that the balance of compensation awarded Milton O. Leslie should be paid at the rate of $28 per week until fully paid, or until the further order of the Commissioner. On the basis of such findings the Commissioner awarded compensation in favor of Milton O. Leslie and against respondent Reynolds and his insurance carrier in the amounts and for the period indicated.

With respect to the claim of Hazel Marie Leslie, the Commissioner found that, by reason of the amputation of her lower left leg as a result of the accident, she was entitled to receive compensation at the rate of $28 per week for 175 weeks, plus 15 weeks healing period, a total of 190 weeks; that compensation was due and owing to May 28, 1955, a period of twenty-nine (29) weeks, totaling in the sum of $812, which should be paid in one lump sum, and the balance of compensation awarded Hazel Marie Leslie should be paid at the rate of $28 per week until fully paid. An award was made in favor of Hazel Marie Leslie and against respondent Reynolds and his insurance carrier on the basis of such findings in the amount and for the period indicated.

The Commissioner further found that respondent Reynolds and his insurance carrier should pay the sum of $1,500 to each claimant for medical, hospital and nursing expenses incurred for their care and treatment.

On appeal, the district court found that the findings of the Commissioner were supported by competent evidence and the award to each claimant entered by the Commissioner on such findings and the stipulation was proper, and that judgment should be rendered in favor of each claimant in accordance therewith. Based upon such findings, the district court entered judgment in favor of each claimant and against respondent Reynolds and his insurance car-

rier in the same amount as awarded by the Commissioner with the exception of total lump-sum payments ordered to be paid each claimant, not here material. Following the entry of the judgments, respondent Reynolds and his insurance carrier, Commercial Standard Insurance Company, perfected their appeals to this court.

For the purpose of identifying the parties in this court, respondent Reynolds and his insurance carrier will be referred to as appellants, and claimants Milton O. Leslie and Hazel Marie Leslie, will be referred to as appellees.

In a preliminary way we note there is no claim that the findings of the district court are not supported by competent evidence. On the contrary, the questions of the employment of Hazel Marie Leslie and the equal division of earnings between the appellees are not now urged, although specified as error. We shall consider them as having been abandoned. When these appeals were presented to this court both parties agreed, and their briefs so state, that they involve only the question of the amount of the average weekly wage under the contract of hiring in force at the time of the accident.

Appellants first contend the trial court erred in determining the average weekly wage of appellees when it included, in addition to the cash payment of $200 per month, the estimated value of advantages furnished appellees, i. e., the sum of $85 per month as house rent; the sum of $25 per week for foodstuff grown on the ranch and consumed by appellees and their family, and the sum of $26.25 per month for the personal use of the automobile. They urge that since there was no evidence that the money rate of such advantages was fixed by the parties at the time of the hiring G. S. 1949, 44-511 (1) precludes their consideration in determining the average weekly wage, and to be susceptible of proof, the contract of hiring must fix their respective amounts by express terms. They assert that Ch. 232, § 11 (d), L. 1927, of which G. S. 1949, 44-511 (1) is amendatory, authorized the inclusion of board, rent, housing or other similar advantages furnished by the employer in determining the amount of the workman's earnings, if their value could be estimated in money; but, when Ch. 74, § 1, L. 1933, Special Session (now G. S. 1949, 44-511 [1]) amended this section and defined the term "wages" as therein set forth, the amending act eliminated all authority to estimate the money rate of advantages furnished. They maintain this court recognized the basic change made by the 1933 amendment when it noted in *Copeland v. Martin Metal Mfg. Co.,*

141 Kan. 725, 730, 42 P. 2d 982 (decided in 1935), it was proper to estimate the value of a portion of an allowance for travel expense under the 1927 Act, but that the statute had since been amended in that respect. In support of this contention appellants rely on *State, ex rel., v. Richardson,* 174 Kan. 382, 386, 256 P. 2d 135, and *Schmeling v. F. W. Woolworth Co.,* 137 Kan. 573, 577, 21 P. 2d 337, where it was said when a statute is revised, some part being omitted, the omitted parts are not readily to be supplied by construction, but are ordinarily to be considered as annulled.

In answer, appellees direct attention to G. S. 1949, 44-511 (1) and contend that the legal test of their weekly wage is "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." They assert the liberal interpretation to be given this statute is that more than pieces of silver shall be doled out to a workman for his services, when particular items of economic gain to him have been agreed upon in a contract of hiring, notwithstanding their respective amounts were not predetermined by the contract. They urge that the Commissioner in the first instance, and the district court on appeal, did not err in receiving and considering evidence of the reasonable value of the house rental, the foodstuff grown on the ranch and consumed by appellees and family, and of the personal use of the automobile, since this evidence established their money rate for services rendered to be recompensed under the contract of hiring.

We pause here to note briefly two rules of this court which have been considered frequently and are well understood by courts and lawyers alike: (1) Our Workmen's Compensation statutes are to be liberally construed with the view of making effective the legislature's intent and not for the purpose of nullifying it (*Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P. 2d 868; *Hilyard v. Lohmann-Johnson Drilling Co.,* 168 Kan. 177, 211 P. 2d 89; *Forcade v. List & Clark Construction Co.,* 172 Kan. 119, 238 P. 2d 549; *Sundgren v. Topeka Transportation Co.,* 178 Kan. 83, 283 P. 2d 444), but, this rule does not permit courts to enlarge upon its plain terms (*Roberts v. City of Ottawa,* 101 Kan. 228, 165 Pac. 869; *Everett v. Kansas Power Co.,* 160 Kan. 712, 716, 165 P. 2d 595); and (2) that the liability of an employer to an employee is a liability arising out of a contract between them and the terms of the statute are embodied in the contract (*Johnson, Guardian, v. Milling Co.,* 116 Kan. 731, 292 Pac. 359; *Baker v. St. Louis Smelting & Refining*

*Co.*, 145 Kan. 273, 280, 65 P. 2d 284; *Ellis v. Kroger Grocery Co.*, 159 Kan. 213, 218, 152 P. 2d 860; *Dean v. Hodges Bros.*, 170 Kan. 333, 337, 224 P. 2d 1028.)

With these rules in mind we shall consider appellants' first contention. The applicable portion of G. S. 1949, 44-511 (1), in effect at the time of appellees' injuries, reads:

> "Whenever in this act the term 'wages' is used it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, and shall not include gratuities received from the employer or others. Board and lodging when furnished by the employer as part of the wages shall be included and valued at $5 per week unless the money value of such advantages shall have been otherwise fixed by the parties at the time of hiring."

This statute was enacted at the Special Session of 1933, and amended Ch. 232, § 11, L. 1927. Both deal with rules for determining compensation to injured workmen. We will presume that the legislature in amending Ch. 232, § 11, L. 1927, intended to make some change in that statute. It is clear that the language and phraseology of the amending Act is different in many respects to the one amended. A change in phraseology or a deleting of a phrase of the original Act raises a presumption that the change of meaning was intended. (*State, ex rel., v. Richardson*, supra.) We are, therefore, confronted with the question: What was the legislature's intention in amending the 1927 Act? The answer requires an examination of our present statute. We first observe the term "wages," as now appears in our Workmen's Compensation Act, was defined by Ch. 74, § 1, L. 1933, Special Session (G. S. 1949, 44-511 [1]). Previously, rules for determining compensation had been prescribed in other sections of the statutes (Ch. 218, L. 1911; Ch. 216, L. 1913; Ch. 226, L. 1917,) but the term itself had never been defined. Thus, we conclude that one of the changes the legislature intended to make was to define "wages," and to prescribe with definiteness what that term includes.

We next examine the definition itself. It speaks of ". . . money rate . . . service rendered is recompensed under the contract of hiring . . . at the time of the accident . . . shall not include gratuities. . . . Board and lodging . . . furnished by the employer . . . shall be included and valued at $5 per week unless . . . otherwise fixed by the parties at the time of hiring." It is clear the legislature intended by this definition that, in computing the wage rate of an employee making claim for work-

men's compensation, the rights and liabilities of the employer and the employee, aside from applicable statutes in force, are to be determined by a contract of hiring in force at the time of the accident, at a money rate as recompense for services rendered, except with respect to board and lodging furnished by the employer, the statutory amount shall apply, when the value of such advantages is not fixed by the parties at the time the contract is entered into. Under the definition, an employer is relieved of being subjected by statute to have the value of advantages furnished by him included in determining the amount of the employee's wages, if the contract of hiring did not include such advantages. Only in the event the employer and employee fail to fix the value of board and lodging by the contract of hiring is the employer held accountable by statute for such advantages, and then only in the amount prescribed. The definition under consideration made significant changes in the amended Act, and leads us to conclude that one of the primary purposes intended by it was to make the right of contract paramount in the relationship between the employer and the employee in determining wages under the Workmen's Compensation Act, and to place the statutory definition of wages on the same basis as the decisions of this court with respect to liability of the employer to the employee under the Act.

We will now discuss the items of automobile use, foodstuff and house rent. There is no dispute as to the facts in these appeals. There was a definite contract of hiring; it was specific in detail as to employment and compensation. The items here in question were agreed upon by the parties as part of the wages of appellees. Pursuant to the agreement, they were used and consumed by appellees, but their value in money was not fixed by the contract of hiring. Although the value of these items was not money in the bank, it represents a real and definite economic gain to appellees and was recompense under the contract of hiring in force at the time of the accident. Was it error to receive evidence of their money rate? The answer requires further examination of the definition of "wages." The term "money rate" is not defined in G. S. 1949, 44-511 (1), nor has it been previously interpreted by this court. Rules for statutory construction are set forth in G. S. 1949, 77-201 and under subdivision "Second" words and phrases shall be construed according to context and the approved usage of the language; but technical words and phrases and such words as have acquired a peculiar and

appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning. Since we find no definition for the term "money rate" we, therefore, seek the meaning of the word "money" as used in this term. Without exhausting the definitions contained in law encyclopedias and dictionaries suffice it to say the word "money" is employed in both specific and general or comprehensive senses. Specifically, it means what is coined or stamped by public authority, and has its value fixed by public authority. Comprehensively, the term signifies wealth and represents commodities and everything transferable in commerce. (36 Am. Jur., Money, § 2, p. 458.) It may signify a medium of exchange or measure of value, and is frequently employed as synonymous with, or meaning property; it has been said to be anything customarily used as a medium of exchange and measure of value. (58 C. J. S., Money, pp. 845, 849.) It has been held to include contract rights and wages. (73 C. J. S., Property, § 8, p. 174.) It is often and popularly used as equivalent to property. (Black's Law Dictionary, 4th Ed. p. 1157.) It is anything having a conventional use either as a medium of exchange or a measure of value, or as a measure of value alone. (Webster's New International Dictionary, 2d Ed.)

In *Mann v. Haines,* 146 Kan. 988, 998, 73 P. 2d 1066, the court said:

". . . People frequently speak of someone as 'being worth a lot of money.' When so speaking they do not necessarily mean 'cash,' but 'property or wealth.' "

We conclude the legislature used the term "money rate" according to context and the approved usage of the word "money" in its comprehensive sense as a measure of value, rather than in its specific sense to mean only money which is coined and stamped by public authority. That the term is not limited to "cash wages" or words of similar import is clear. Had it been so intended the legislature would have expressly so declared. Like other provisions and terms of our Workmen's Compensation Act, the term "money rate" should be liberally construed to achieve the beneficial purposes the Act intends, and as used in our statute means all items of compensation agreed upon in a contract of hiring which are measurable in money and are recompense under the contract of hiring whether in the form of cash or as a real and definite economic gain to the employee, except when the value of board and lodging is not fixed at the time of hiring. It was not error, therefore, to receive evidence of their money rate.

1. The value of the automobile use: The record discloses the money rate for the use of the automobile was based upon 10½¢ per mile of cost of operation, which included depreciation, operating expenses, taxes and insurance; and, that the car had been driven over 12,000 miles of which 75 percent was for ranch business and 25 percent was for the personal use of the appellees. In view of these facts it is understandable why the parties did not fix a money rate for the use of the automobile when the contract of hiring was entered into. Very likely the parties did not know what the percentage of its use would be for ranch business or for the personal use of the appellees; nor, for that matter, what the cost of its operation would be. Be that as it may, the fact remains the use of the automobile, with all expenses paid, was included in the contract of hiring as recompense thereunder, and the district court properly ascertained and included its money rate in determining the average weekly wage of the appellees.

2. The value of foodstuff: The record is undisputed that appellant Reynolds agreed to furnish to appellees an unlimited amount of meat, eggs, milk, butter and garden produce for the family's use. Although the value of this item was not agreed upon, it is understandable why it was not. However, its value was in no way speculative and was susceptible to ready computation. Was the item "board," as used in G. S. 1949, 44-511 (1)? The word "board" is not defined in the statute. Our previous decisions have not interpreted its meaning, and we look again to law encyclopedias and dictionaries for a definition. In 11 C. J. S., Board, p. 369, it is defined as follows:

"It has been said that the use of the word in this sense had its origin in the wooden material used in the construction of a table or stand, and has been defined as meaning furnished food, provisions, stated meals, or what is served on a table as food; . . . In its ordinary acceptation the term 'board,' it has been said, covers both room rent and meals, although under particular circumstances, as when speaking of day board, or table board, it may exclude lodgings, its meaning may be restricted to meals or food. 'Board' implies a succession of meals obtained from day to day, from week to week, or from month to month, and usually a payment therefor, and sometimes a payment for other connected purposes than the mere furnishing of food to the person making the payment, . . ."

Black's Law Dictionary, 4th Ed. defines it as follows: " 'Board,' as a verb, means to receive food for a reasonable compensation, either with or without lodging." Webster's New International Dictionary, 2d Ed. defines "Board" to mean: "What is served on a

table as food; stated meals; provisions; entertainment;—usually as furnished for pay; as, to work for one's *board; board* and lodging." The word is sometimes extended to include lodging. While it may have this double meaning, the primary meaning of the word "board" is furnished food.

In *Wofford v. Hooper,* 149 Tenn. 250, 254, 259 S. W. 549, it is said: "Quite commonly the expression 'board and lodging' is used when both are furnished, and the term 'board' may well be applied in a sense limiting it to food."

It is clear that the foodstuff fell far short of being board in its ordinary sense. The appellees had to buy much of their own groceries; they had to prepare all of their own meals. We do not regard this contract of hiring as an agreement to furnish board. We conclude that the item of foodstuff was not "board" within the meaning of the term "board and lodging" as used in G. S. 1949, 44-511 (1), and that its money rate was properly ascertained and included by the district court when it computed appellees' average weekly wage.

Another reason exists why the money rate of the two items above was properly considered by the district court. It is this: the fact that the statute (G. S. 1949, 44-511 [1]) expressly fixes a value on' board and lodging when furnished by the employer as a part of the wages when their money value is not fixed by the contract of hiring, and is silent with respect to any other items or advantages of real and definite economic gain to the employee, which are or may be included in a contract of hiring and are recompense thereunder, justifies an inference under the maxim *expressio unius est alterius exclusio* that the money rate of such items or advantages is ascertainable and should be considered in determining the wage rate of the employee, notwithstanding the same is not expressly fixed by the contract of hiring.

3. The value of the house rent: The record discloses that appellant Reynolds agreed to and did furnish appellees the use of a completely modern house on the ranch and paid all utilities, but, its rental value was not fixed by the contract of hiring. In view of what has been previously said, we conclude that the furnishing of the house for the use of appellees is "lodging" within the meaning of the term "board and lodging," as used in G. S. 1949, 44-511 (1), and where, as here, the value of such advantage was not fixed by the contract of hiring, the statutory rate of $5 per week for such

advantage controls, and is the amount the district court should have used in determining the average weekly wage of each appellee. It was error for the district court to include the sum of $85 per month as rental value for the house in determining the average weekly wage of appellees.

The appellants' second contention is that the district court erred when it adopted and approved the findings of the Commissioner that the $800 bonus payment should be included as wages paid appellees under the contract of hiring at the rate of $15.38 per week. They maintain the bonus did not represent payment for services rendered under the contract of hiring, that it was a gratuity received from the employer and was excluded by the express terms of G. S. 1949, 44-511 (1). We do not so regard the contract of hiring. Appellant Reynolds testified with respect to the additional amount paid appellees, as follows:

"Q. Now, tell the Court what this conversation was. Who said what to whom? A. Well, I asked them if they wanted to take over the ranch, and they said they did. The fact is, Milton said, 'On what basis?' He didn't want it on a salary basis, he wanted it on a percentage basis. I said, 'That is the way I want it.' And I told them that I wanted one thing straight: that Hazel had to work right with Milton. And what I paid them, why, they both would share in. If it was a bonus or livestock or whatever it was, that is what they got. And they could have a draw of $200.00 per month, and that was all, unless they had to have some more money, got sick or something and had to have some more money, then they could have it. *I limited them to $200.00 a month draw, is all. There was nothing stated as to how much a month they got, because it would be paid in bonuses or in livestock.* . . . Examiner Meador: Let him think a minute. I think he knows what you mean. A. Like I told them, I don't set it with any of my help, how much they get. I pay them for what they make for me. Examiner Meador: Did you have a percentage on it? A. No, sir, no percentage basis. Examiner Meador: You didn't say you would pay them 10 percent or 5 percent, or anything of that sort? A. No, sir. Q. (By Mr. Callahan) Now, is that in regard to the bonus or to a profit sharing plan? You said no percentage. A. Well, there was no percentage. I didn't say how much I was going to give them. I just tried to equalize it to what it looks like they would do, *for the work they would do.* I gave them $800.00. . . ." (Emphasis supplied.)

It is clear from appellant Reynolds' testimony he intended the payment of $800 to be a bonus for work the appellees did for him under the contract of hiring in addition to the draw of $200 per month. The Commissioner so found and the district court approved this finding, and we think the evidence supports it.

Both appellees and appellants cite the case of *Barron v. Ambort,*

64 Ariz. 209, 167 P. 2d 925. We do not believe it is applicable to the facts present here.

Ordinarily, a bonus is not a gift or a gratuity but is a sum paid for services, or upon a consideration in addition to or in excess of that which would otherwise be given. In *Erickson v. General Motors Corporation*, 177 Kan. 90, 95, 276 P. 2d 376, the court said:

". . . The word 'bonus' is defined as something in addition to what is ordinarily received by or strictly due to, the recipient. . . ."

With respect to the term "bonus" 11 C. J. S., Bonus, p. 515, reads:

". . . an additional compensation in return for continuous and efficient service for a specified period of time; . . . a sum paid for services or on a consideration in addition to or in excess of that which would ordinarily be given; . . ."

Based upon the testimony of appellant Reynolds and the findings of the district court it was not error for the district court to include the sum of $15.38 per week as a bonus for work performed by appellees under the contract of hiring, and this amount was properly included in determining the average weekly wage of appellees.

We have no hesitancy in concluding that, in view of the findings, the district court did not err when it included as items of wages the money value of the use of the automobile in the sum of $26.25 per month; the money value of the foodstuff in the sum of $25 per week, and the bonus payment in the sum of $15.38 per week in determining appellees' average weekly wage. It was error for the district court to include the sum of $85 per month as rental value for the house. It should have applied the statutory rate of $5 per week as lodging in determining the average weekly wage of each appellee.

For reasons indicated, the proper award in these cases may or may not vary from the amount fixed by the district court. Accordingly, the judgment should be affirmed in part and modified in part, with authority to correct the award, if necessary, to conform strictly with this opinion. It is so ordered.

THIELE and PRICE, JJ., dissent from (1) (*b*) of the fifth paragraph of the syllabus and the corresponding portion of the opinion.