EARL D. HORMANN, *Appellee,* v. NEW HAMPSHIRE INSURANCE COMPANY, AMERICAN INTERNATIONAL ADJUSTMENT COMPANY, INC., and RICHARD L. HULSE, *Appellants.*

No. 56,211

MICHAEL C. SNYDER and HAZEL M. SNYDER, *Appellants,* v. HOME INDEMNITY COMPANY, and MARK A. WOLF, *Appellees.*

(689 P.2d 837)

Opinion filed October 26, 1984.

*Steven R. Smith,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Linda S. Parks,* of the same firm, was with him on the brief for the appellants in case No. 56,184.

*James P. Johnston,* of Johnston & Johnston, P.A., of Wichita, argued the cause and was on the brief for appellee in case No. 56,184, and argued the cause and was on the brief for appellants in case No. 56,211.

*James T. McIntyre,* of Turner & Boisseau, Chartered, of Wichita, argued the cause and was on the brief for appellees in case No. 56,211.

The opinion of the court was delivered by

LOCKETT, J.: The plaintiffs in two Sedgwick County cases, consolidated for appeal, attempted to sue their employers' workers' compensation insurers for tortious behavior in termi-

nating the injured workers' benefits without just cause. *Hormann* is here on interlocutory appeal following the district court judge's denial of insurers' motion to dismiss for the worker's failure to state a cause of action. *Snyder* is here following summary judgment for the insurer in which a different district judge found that the worker's compensation remedies were exclusive.

There is no dispute as to the facts in either case. In *Hormann,* the worker was injured in an automobile accident while in the course of his employment. Hormann and his employer's insurers (insurers) entered into a voluntary agreement under which the insurers agreed to pay benefits to plaintiff pursuant to the Kansas Workmen's Compensation Act (Act). When Hormann failed to keep a scheduled doctor's appointment, the insurers suspended his benefits on June 29, 1981. Hormann claims he suffered severe emotional distress because of the lost income while he was disabled and unable to work.

Approximately 90 days after benefits were cut off, Hormann filed an application for a preliminary hearing against defendants pursuant to K.S.A. 1983 Supp. 44-534a. On October 7, 1981, at the hearing, benefits were reinstated retroactive to September 21, 1981. Hormann also filed this action seeking damages for the harm caused by the insurers suspending payment of Hormann's benefits. Defendants filed a motion for judgment on the pleadings and, when the motion was overruled, sought this appeal.

In *Snyder,* the worker suffered a broken arm while in the scope of his employment. The insurer voluntarily began paying temporary total disability payments in July of 1981. As a result of his injury, Snyder required a bone graft from his left hip. On December 17, 1981, Snyder, while at home recuperating from his operation, fell and injured his left hip. Snyder was readmitted to the hospital. Upon learning of Snyder's hospitalization, the insurer suspended Snyder's benefits. Benefits were stopped during the holiday season. Snyder was forced to leave his home when utilities were shut off because he could not pay his bills. Snyder had a number of checks bounce because the insurer refused to make the agreed payments. Snyder was required to file for welfare and emergency assistance. Snyder's attorney met with the insurer's representative and attempted to get benefits reinstated, but was unsuccessful.

Snyder then sought a preliminary hearing before an adminis-

trative judge. Two days before the scheduled hearing, the insurer agreed to reinstate Snyder's benefits with complete back payment of all benefits due during the period of suspension. At the preliminary hearing the administrative judge found Snyder was entitled to total disability benefits throughout the period and ordered the insurer to pay all the hospital expenses resulting from the December 17 admission. Snyder then filed this action seeking damages for severe emotional distress resulting from the loss of all financial support while being disabled. The insurer requested summary judgment claiming that a cause of action did not lie because of the exclusive remedy provisions of the Kansas Workmen's Compensation Act. The motion was granted and Snyder appealed.

Workers' compensation acts are largely the outgrowth of modern industrial life. They give recognition to a broad social obligation, in furtherance of sound public policy. The public has come to realize that in many cases an injured employee engaged in a hazardous employment will be unable to establish actionable negligence on the part of the employer, but that it is unjust to deny relief to the employee on that account. For this and similar reasons, workers' compensation acts have shifted from the employee to the industry and indirectly to the general public certain burdens incidental to modern industrial operations. Compensation is thus provided for injuries by accident arising out of and in the course of the employment, regardless of any showing of negligence on the part of the employer. On the other hand, the amount of compensation so provided is in many cases substantially less than might be secured by the injured employee in a common-law action, where the employer's negligence is established. There is thus a sort of balancing of benefits in the common interest. Some employees may receive less compensation for injuries received than they would have been able to recover in a common-law action, while many other employees will receive benefits which they otherwise would not be able to receive because of the inability to establish the employer's negligence. *Duncan v. Perry Packing Co.*, 162 Kan. 79, 84, 174 P.2d 78 (1946).

The Act was considered in *Yocum v. Phillips Petroleum Co.*, 228 Kan. 216, 612 P.2d 649 (1980). This court, in reviewing the Act, determined the Act is designed to provide a simple and

efficient means of providing compensation to the injured worker while avoiding litigation. *Souden v. Rine Drilling Co.,* 150 Kan. 239, 241, 92 P.2d 74 (1939); *Walz v. Missouri Pac. Rld. Co.,* 130 Kan. 203, 285 Pac. 595 (1930). The Act is to be liberally construed to effectuate its purpose. *Ours v. Lackey,* 213 Kan. 72, 79, 515 P.2d 1071 (1973); *Craig v. Electrolux Corporation,* 212 Kan. 75, 76-77, 510 P.2d 138 (1973); and *Green v. Burch,* 164 Kan. 348, 189 P.2d 892 (1948).

The workers' compensation law has also been held to be contractual in nature, rather than establishing tort liability, with the terms and provisions of the statute being incorporated into the employment contract. *Houk v. Arrow Drilling Co.,* 201 Kan. 81, 91, 439 P.2d 146 (1968); *Moeser v. Shunk,* 116 Kan. 247, 251, 226 Pac. 784 (1924). The employee, as well as the employer, is bound by the rules and procedures set forth in the Act. *Wilburn v. Boeing Airplane Co.,* 188 Kan. 722, 729, 366 P.2d 246 (1961); *Walz v. Missouri Pac. Rld. Co.,* 130 Kan. 203; and *Chappell v. Morris & Co.,* 118 Kan. 210, 235 Pac. 117 (1925).

Once it is determined that the employment relationship is covered by the Act, the rights and liabilities of the parties are determined thereunder. *Baker v. St. Louis Smelting & Refining Co.,* 145 Kan. 273, 65 P.2d 284 (1937), 109 A.L.R. 591. The Act is considered to be substitutional rather than cumulative and supplemental, and, therefore, provides the exclusive remedy for the injured worker. *McRoberts v. Zinc Co.,* 93 Kan. 364, 367, 144 Pac. 247 (1914). In *Duncan v. Perry Packing Co.,* 162 Kan. at 85, this court discussed the issue of exclusivity and noted:

"Our workmen's compensation act (G.S. 1935, 44-501 to 44-565, ch. 44, art. 5, as amended) thus establishes a broad system covering all injuries by accident within its purview. And the act specifically provides that 'save as herein provided no such employer shall be liable for any injury for which compensation is recoverable under this act' (G.S. 1935, 44-501). Consonant with this specific provision and in harmony with the whole purpose and tenor of the act, we have repeatedly held that 'the workmen's compensation act establishes its own procedure and furnishes a remedy which is substantial, complete and exclusive, from the inception of the claim to final judgment thereon' [citations omitted]."

It is well settled that the workers' compensation act provides the only remedy for injuries which are encompassed within its scope. *Bitnoff v. Southwest Rendering,* 223 Kan. 334, 336, 573 P.2d 1033 (1978); *Shade v. Cement Co.,* 92 Kan. 146, 148, 139 Pac. 1193, *aff'd* 93 Kan. 257 (1914). The logical extension of this

rule is that where a remedy exists under the statute, the injured worker no longer has the right to bring a common-law cause of action.

The central issue in the instant cases is whether a worker may sue his employer's workers' compensation insurer for the tort of either outrage or infliction of severe emotional distress. The insurers claim that the Kansas Workmen's Compensation Act is the worker's exclusive remedy because the worker is limited to the remedies offered by K.S.A. 44-512b when compensation benefits are temporarily suspended by the insurers without cause.

Where the question has been raised, a majority of the states have allowed such suits based on the reasoning that an intentional tort, as claimed by Hormann and Snyder, does not arise out of employment. In some states, even though the statutes may include penalty provisions, the courts have generally found that their compensation acts are not intended as remedies for intentional wrongs by an insurer.

The policy arguments for allowing such suits consider the advancements of tort law. Most workers' compensation laws were developed around 1910 when workers had limited opportunities or rights to sue and collect from their employers. While it was extremely difficult for employees to recover under early 20th Century tort law, the present tort system has removed or lowered many of the barriers to recovery. The result is that workers whose injuries are compensable exclusively under workers' compensation can be seriously disadvantaged relative to those with access to tort remedies. Due to the limitations of the exclusive remedy rule, some courts have carved out four exceptions which allow workers to recover more from employers than the statutorily prescribed benefits. One of these exceptions has been in the area of intentional torts. "Most courts reconcile this exception with the exclusive remedy language by arguing that intentional torts fall outside the statutory scheme because they are not accidental or employment related as required by the statutes." Note, *Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes,* 96 Harv. L. Rev. 1641, 1650 (1983).

Those courts which have allowed such causes of action generally find that the tortious injury was not envisioned by the

legislatures to be included in coverage by workers' compensation acts nor were the penalty provisions intended to include coverage for these types of injury. In *Martin v. Travelers Insurance Company*, 497 F.2d 329 (1st Cir. 1974), the claimant was suing after the insurer had stopped payments on drafts the insurer had already written to cover an award of compensation. The court found that the damage which was the basis of the suit did not arise out of or in the course of employment nor was the damage caused by a third person because of plaintiff's employment. Instead, the damage was allegedly incurred in the course of and arising out of plaintiff's status as a claimant seeking compensation after his status as an employee had terminated.

California, in *Unruh v. Truck Insurance Exchange*, 7 Cal. 3d 616, 102 Cal. Rptr. 815, 498 P.2d 1063 (1972), found that a compensation insurer did not remain within its proper role as such when, through its agents or others employed by it, such insurer intentionally embarked upon a deceitful course of conduct in its investigations which caused injury to the subject of the investigation. Maine, in *Gibson v. Nat. Ben Franklin Ins. Co.*, 387 A.2d 220 (Me. 1978), also found that while an employer's general immunity from common-law suit provided by the workers' compensation system to employers is also available to carriers, it did not apply where intentional torts were alleged and the penalty provision of the statute was not intended to exclude every other remedy in a case of intentional wrongdoing.

In *Coleman v. American Universal Ins. Co.*, 86 Wis. 2d 615, 273 N.W.2d 220 (1979), the Wisconsin court found that the alleged intentional and malicious withholding of compensation payments did not arise out of the employment but occurred long after the employment ceased and had its genesis in conduct by the insurer that arose not out of the employment but out of the contractual obligation of the insurer to pay. See also *Broaddus v. Ferndale Fastener*, 84 Mich. App. 593, 269 N.W.2d 689 (1978), and *Robertson v. Travelers Insurance Co.*, 100 Ill. App. 3d 845, 427 N.E.2d 302 (1981), for similar results.

A minority of states have held that workers' compensation acts bar suits by claimants against insurers for injuries resulting when the insurers unjustly cut off the workers' benefits. These decisions are based either on the principle that the workers' com-

pensation scheme is an exclusive remedy meant to prevent such suits or the wording of a statute specifically denies such actions.

Courts which have denied intentional tort actions believe any change in the exclusive remedy rule would betray the bargain implicit in the enactment of the original workers' compensation laws and thereby impair, if not destroy, the compensation system itself. Several states have held that the specific language of their statutes bar such actions. New Mexico, in *Dickson v. Mountain States Mut. Cas. Co.*, 98 N.M. 479, 650 P.2d 1 (1982), determined that its act expressly makes the remedies provided by the act the sole and exclusive remedies available to an employee for claims against his employer or insurer. New York, in *Penn v. Standard Accident Ins. Co.*, 4 App. Div. 2d 796, 164 N.Y.S.2d 618 (1957), found that its statute abolished all other statutory and common law rights against the employer or insurer. In *Whitten v. American Mut. Liability Ins. Co.*, 468 F. Supp. 470 (D.S.C. 1977), the court found that to allow such a remedy would violate the policy, if not the specific terms of the exclusivity provision of the state workers' compensation act because the act afforded the claimant a full remedy against the carrier. The proper remedy was the penalty provision of the act, in combination with a provision providing for an automatic 10 percent increase in any overdue benefit.

Two courts have refused to allow such actions where mere negligence and mismanagement were alleged, but stated they would allow such actions if there were intentional nonpayment of benefits or the presence of bad faith on the part of the insurer. In *Stafford v. Westchester Fire Ins. Co. of N. Y., Inc.*, 526 P.2d 37 (Alaska, 1974), the court said that while the penalty provision of the Alaska Workers' Compensation Act applied to both negligent and to willful and intentional misconduct by an insurer, it was not the sole remedy available for improper conduct. The court reasoned that while an insurer obtained immunity as the alter ego of the employer, such immunity was lost when the insurer exceeded its proper role and thus became a "person other than the employer."

In *Hayes v. Aetna Fire Underwriters*, 187 Mont. 148, 609 P.2d 257 (1980), the Montana court said that the penalty provisions of state schemes are not intended as remedies for intentional wrongdoings. The compensation act should not be a "shield" which will insulate those who would engage in intentional

wrongdoing in the settlement and investigation of workers' claims.

Kansas has not considered this exact issue. In *Yocum v. Phillips Petroleum Co.*, 228 Kan. 216, the court considered whether a claimant who was fraudulently induced by his employer to enter into a settlement agreement could sue his employer in tort. The *Yocum* court held that where a remedy is available to the injured employee under the Act, the employee could not maintain an independent action to recover damages for the employer's fraudulent misconduct which resulted in an unjust settlement and award.

The *Yocum* case differs from the present cases in that it involved fraud by the employer and it was the employer, a self-insurer, that was sued. Hormann's and Snyder's claims are against the insurers for intentional torts the insurers committed against the employees.

K.S.A. 44-501 defines the conditions for coverage under the Act. To receive benefits, the claimant must show that there was a "personal injury by accident arising out of and in the course of employment." In *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793 (1919), the court considering the definition of "personal injury by accident" determined "[a]n accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force. The word undesigned must not be taken too literally in this connection, because a person may suffer injury accidental to him, under circumstances which include the design of another." 104 Kan. at 773.

The definition of the word "accident" as it is used in our workers' compensation law, given in the case just cited, has been followed in all cases involving the question arising in this court since that decision.

The question then is whether the insurers' acts of intentionally terminating compensation payments occurred while "arising out of or in the course of employment." Arising "out of" and "in the course of" the employment, as used in our Workmen's Compensation Act (K.S.A. 44-501 *et seq.*), have separate and distinct meanings; they are conjunctive and each condition must exist before compensation is allowable. The phrase "in the course of" employment relates to the time, place and circumstances under

which the accident occurred, and means the injury happened while the workman was at work in his employer's service. The phrase "out of" the employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises "out of" employment if it arises out of the nature, conditions, obligations and incidents of the employment. *Newman v. Bennett,* 212 Kan. 562, Syl. ¶ 1, 512 P.2d 497 (1973).

Hormann and Snyder claim their causes of actions, by this definition, did not occur "in the course of" employment or were not in "the nature, conditions, obligations and incidents" of the employment. If the causes of actions are not included under this definition, then they should not be barred by the Act in their suits against the insurers. In *Martin v. U.S.D. No. 233,* 5 Kan. App. 2d 298, 615 P.2d 168 (1980), the Court of Appeals considered the meaning of "incidents" of employment. The Court of Appeals correctly determined that before an injury can be said to arise out of the employment, the risk must be incidental to the work. A risk is incidental to the employment when it belongs to or is connected with what the workman has to do in fulfilling his duties. *Fisher Body Div., G.M.C. v. Ind. Com.,* 40 Ill. 2d 514, 240 N.E.2d 694 (1968).

In Kansas, to be a compensable injury under the Act, the injury must have been caused by an accident arising out of and in the course of employment. The injuries of which Hormann and Snyder complain were intentional acts of the insurers which did not occur while either workman was fulfilling his duties or incidental to the work he was required to perform. The acts of the insurers terminating the payments arose outside the employment and are not covered under the general principle of the Kansas Act.

The insurers claim that K.S.A. 44-512b affords the workers an exclusive remedy when, prior to a hearing, the workers' compensation benefits are temporarily suspended by an insurer without cause. Courts in other jurisdictions which have considered this issue generally look to the workers' compensation statutes and attempt to determine whether such an action is barred based on the wording of the statute itself.

K.S.A. 44-512b provides for a penalty when an employer or insurer fails to pay, without just cause, compensation claimed

prior to an award. The worker entitled to the payment is entitled to interest at the rate of eight percent (8%) per year on the amount of disability compensation found to be due and unpaid. The interest due is assessed against the employers or the insurer liable for the compensation, accruing from the date the compensation was due. This section was added to the Act in 1979, and there have been no cases construing the section. None of the cases cited from other jurisdictions in which the remedy provision was found not to be exclusive have language similar to the Kansas statute. Most of those remedy provisions deal with overdue or delayed payments. The Wisconsin statute cited in *Coleman v. American Universal Ins. Co.*, 86 Wis. 2d at 625, comes closest. It states:

" '102.22 **Penalty for delayed payments.** (1) Where the employer or his insurer is guilty of inexcusable delay in making payments, the payments as to which such delay is found shall be increased by 10%.' "

In discussing the statute, the Wisconsin court found that conduct which is inexcusable is nevertheless in most cases far short of bad faith, which involves intent to deny payments without a bona fide reason. Conversely, the penalty payments would not be applicable when there is a good-faith basis for not making payments. The inexcusable delay provision of sec. 102.22 does not contemplate that the intentional tort of bad faith can be expiated merely by payments augmented in the amount of 10 percent.

The Kansas statute contains the phrase "not just cause or excuse for the failure of the employer or insurance carrier to pay." Did our legislature, by use of that phrase, intend to include the intentional tort of bad faith failure to pay in the penalty provision of K.S.A. 44-512b?

As a general rule, exclusive of exceptions created in the Act itself, the Kansas Act's operation is exclusive of all other remedy and liability. Kansas cases have followed the principle that if the Kansas Workmen's Compensation Act affords the worker a remedy for the wrong, the compensation Act is exclusive, thus barring an independent tort action at common law. In *Yocum,* we determined where a worker was fraudulently induced by his employer to enter into a settlement agreement, the worker could not maintain an independent action to recover damages for the employer's intentional conduct which resulted in an unjust set-

tlement and award. The worker was required to seek relief under K.S.A. 44-528 as the exclusive remedy.

In construing the Act, we are guided by the general rules of statutory construction and interpretation. We are required to seek out and, as far as possible, give effect to the legislative intent. There is no doubt that the legislature intended, by the use of the phrase "not just cause or excuse for the failure of the employer or insurance carrier to pay" compensation claimed prior to an award, to include the insurer's intentional act of refusing to pay compensation claimed by the worker. The worker's exclusive remedy to obtain relief where an insurer intentionally refuses to pay compensation prior to an award is contained in the Act set forth in K.S.A. 44-512b. To allow independent common-law actions by Hormann and Snyder would circumvent the intent of the legislature and the Act.

*Hormann v. New Hampshire Ins. Co.,* No. 56,184, is reversed and remanded to the district court to enter judgment in accordance with this opinion.

*Snyder v. Home Indemnity Co.,* No. 56,211, is affirmed.